EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ LUIS LÓPEZ RIVERA, acusado y apelante.

*Números:* CR-63-397 al CR-63-399    *Resueltos:* 26 de enero de 1965

694

*Augusto Burgos Mundo,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* e *Irene Curbelo, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El apelante fue acusado de tres infracciones al Art. 29 de la Ley de Narcóticos de Puerto Rico, 24 L.P.R.A. sec. 974z, consistentes en poseer, ocultar, transportar y vender la droga conocida como heroína. Hizo alegación de inocencia en cada uno de los tres cargos y en el acto del juicio estuvo repre-

sentado por dos abogados. Fue declarado culpable de los tres cargos por veredicto unánime del jurado.

La transacción que dio lugar al pliego acusatorio puede resumirse así: El día 4 de noviembre de 1960 el confidente, Antonio Reyes Ríos, y el agente encubierto Ibraím Mestre Sánchez, se acercaron al apelante de quien el primero solicitó la venta de heroína. El apelante dijo que no tenía la droga encima, que la tenía en otro lugar. El confidente le dio $10.00 para que le buscase dos "*decks*" o bolsitas de heroína. Entonces el acusado se retiró en dirección al Caserío Puerta de Tierra y como a los diez minutos regresó con la heroína. El confidente y el agente Mestre le aguardaban en la calle cerca de un automóvil. De regreso, el apelante depositó dos bolsitas de la mencionada droga sobre el guardalodo derecho trasero del referido automóvil. El confidente las tomó y se las entregó a Mestre. Como a quince pies de distancia observaba la transacción otro agente encubierto de nombre Juan Santiago Meléndez a quien se le había encomendado que colaborara con Reyes y Mestre.

En la tramitación de la causa los dos agentes, Mestre Sánchez y Santiago Meléndez, actuaron como testigos de cargo. Habiendo hecho alusión Mestre a la existencia del confidente, la defensa solicitó que se le informase el nombre y la dirección de éste, "a los fines de poder interrogar debidamente al testigo que se halla en la silla [Mestre] y preparar una defensa adecuada en este caso en beneficio de nuestro representado." A preguntas del fiscal, el testigo Mestre declaró que el nombre del confidente era Antonio Reyes Ríos y al Tribunal preguntarle la dirección del confidente, Mestre contestó: "En realidad no tengo conocimiento de eso." Entonces el juez preguntó al fiscal si él tenía conocimiento de la dirección del confidente Reyes Ríos y el fiscal contestó que no lo tenía.

Al comenzar la prueba de defensa uno de los abogados defensores anunció que la teoría de la defensa surgiría de la prueba.

Declaró en primer lugar el propio acusado. Dijo que conocía de vista al confidente Antonio Reyes Ríos; que en julio de 1960 se lo encontró en la calle Pelayo de San Juan; que allí Reyes Ríos le ofreció en venta una cadena de oro; que le pidió $13.00 por ella; y que le compró la cadena. También declaró el acusado que como dos semanas más tarde volvió a ver a Reyes Ríos; que éste le pidió $13.00 más porque alegó que la cadena valía $20.00;(¹) que por ese motivo tuvieron una discusión y se fueron a las manos; que luego volvió a ver a Reyes Ríos dos o tres veces por allí pero que no ocurrieron más incidentes entre ellos. Declaró también el acusado que no es adicto a drogas y que en ningún momento ha traficado en ellas; que trabaja a veces en los muelles; que no está unionado.

El segundo y último testigo de la defensa fue Juan F. Casañas, vecino de Puerta de Tierra, quien dijo conocer al acusado desde que éste era muchachito; dijo que el acusado tiene muy buena reputación; negó saber que al acusado le dijesen "El Lambío" y que él (el testigo) tiene amistad con los padres del acusado.

El apelante señala la comisión del siguiente único error:

"El tribunal de instancia erró al rechazar la solicitud de la defensa para que se le diera toda la información necesaria para establecer la identidad del confidente Antonio Reyes Ríos."

Lo que se conoce como el "privilegio del confidente" (*informer's privilege*) es en realidad el privilegio del Estado de no divulgar la identidad de aquellas personas que suministran a las autoridades información sobre violaciones de la ley. *Roviaro* v. *U.S.*, 353 U.S. 53, 59 (1957); *Scher* v. *U.S.*, 305 U.S. 251, 254 (1938); *In re Quarles and Butler*, 158 U.S. 532 (1895); *Vogel* v. *Gruaz*, 110 U.S. 311, 316 (1884). El propósito y la justificación del privilegio consisten en la pro-

---

(¹) Esto aparece en la página 55 del récord. En la página 64 el acusado dice que en esa ocasión Reyes Ríos le pidió $7.00 más (y no $20.00 como dijo antes).

tección y el auxilio que el mismo presta al interés general en que se combata el crimen. La existencia del privilegio es un reconocimiento judicial del deber de los ciudadanos de comunicar a las autoridades la información que tengan sobre la comisión de delitos, y dicho privilegio, al evitar la identificación de los que suministran esa información, les estimula en el cumplimiento de dicha obligación. *Roviaro* v. *U.S.*, supra, pág. 59. Sin duda, por eso ha dicho el Tribunal Supremo de los Estados Unidos que milita contra el interés general el descubrir la identidad del confidente a menos que hacerlo sea indispensable para la defensa del acusado. *Scher* v. *U.S.*, supra. Véanse también *Segurola* v. *U.S.*, 16 F.2d 563, 565 (1926); *Shore* v. *U.S.*, 49 F.2d 519, 522 (1931); *McInes* v. *U.S.*, 62 F.2d 180 (1932).

Otra razón para no revelar la identidad del confidente es corolario de la primera, antes expresada. Habiéndose reconocido la utilidad del confidente en la siempre difícil tarea de proteger la sociedad del hampa, se reconoce también la necesidad de darle protección a los confidentes no identificándolos; con la salvedad antes hecha de cuando ello es indispensable para la defensa del acusado. Es fácil entender que un confidente delatado corre riesgo personal. Se han dado casos en que confidentes identificados han sido asesinados. *Draper* v. *U.S.*, 358 U.S. 307 (1959); *Brown* v. *U.S.*, 222 F.2d 293 (1955); *Schuster* v. *City of New York*, 154 N.E.2d 534 (1958).

Sobre el particular se ha expresado como sigue el Juez Clark, disintiendo en *Roviaro*, supra, a las pags. 66–67:

"Debe tenerse a bien recordar que el tráfico ilegal de drogas narcóticas plantea un serio problema social. Solo necesitamos revisar los periódicos para apreciar su magnitud. Ningún delito lleva más directamente a la comisión de otras ofensas. Más aún, es un delito muy difícil de descubrir y probar. Debido a que las drogas vienen en pequeñas píldoras o en polvo y son fácilmente empacadas en cápsulas o envases vidriosos pueden ser fácilmente ocultadas. Pueden ser transportadas sobre la persona o aún en las

cavidades del cuerpo donde su descubrimiento es casi imposible. El hacer valer las leyes al respecto resulta, por consiguiente, muy difícil sin el uso de confidentes. Su uso por mucho tiempo ha tenido la aprobación de los tribunales. Para protegerlos los gobiernos siempre han seguido la política de no revelar su identidad. La experiencia enseña, que una vez esta política se relaja su efectividad se destruye. Una vez el confidente es conocido, los traficantes en drogas se vengan de inmediato. Los muertos no hablan."

El Profesor Wigmore lo expresa de este modo:

"Un privilegio genuino . . . debe reconocerse en el caso de la identidad de personas que suplen al Estado información relacionada con la comisión de delitos. Las comunicaciones de esta naturaleza deben ser alentadas. Son desalentadas si la identidad del confidente se revela. Ya sea que el confidente actúa motivado por espíritu cívico, por promesa de clemencia o por la esperanza de recompensa pecuniaria, usualmente condicionará su cooperación a que se le asegure su anonimato, con el fin de protegerse a sí mismo y a su familia de daño, para evitar reacciones sociales adversas y evitar el riesgo de acciones por difamación o persecución maliciosa en su contra. El Estado también tiene interés en la no revelación de la identidad de sus confidentes. Los agentes del orden con frecuencia dependen de confidentes profesionales para obtener un flujo de información sobre actividades delictivas. La revelación del papel desempeñado por los confidentes destruye su utilidad y desalienta a otros de servir en igual forma." 8 Wigmore, *On Evidence* sec. 2374 (1961).

Además de las autoridades antes citadas pueden verse las siguientes discusiones de este asunto: Rosenthal, *The Informer Privilege in Criminal Prosecutions*, 11 Hastings L.J. 54 (1959); Sisson, *Identification of Informer in Narcotic Sale Prosecution*, 33 So. Cal. L. Rev. 344 (1960); Anotación, 59 A.L.R. 1555, 1559; Anotación 9 A.L.R. 1099, 1112.

■ Como puede verse por la discusión anterior, la regla general en materia de confidentes es que, por razón de orden público, los tribunales reconocen el privilegio del Estado de no divulgar la identidad del confidente. Sin embargo,

el importante caso de *Roviaro* v. *U.S.*, supra, establece una excepción a la mencionada regla, excepción que ha sido llamada la del "confidente-participante" (*participant-informer rule*). El confidente participante, como el término indica, es uno que participa, que toma parte en la transacción delictiva. Se diferencia así del mero confidente que suple información a las autoridades pero que no participa en la transacción de la cual surge el delito. *People* v. *Lawrence*, 308 P.2d 821, 830 (1957); Sisson, *Identification of Informer in Narcotic Sale Prosecution*, 33 So. Cal. L. Rev. 344 (1960); Dubin, *The Informer's Privilege Versus the Constitution: A Doctrinal Dilemma*, 50 J. Crim. L., C. & P.S. 554 (1960); Rosenthal, *The Informer Privilege in Criminal Prosecutions*, 11 Hastings L.J. 54 (1959); Nota, *Disclosure of Identity of Informant*, 26 Tenn. L. Rev. 308 (1959); Comentario, *Disclosure of Informers Who Might Establish the Accused's Innocence*, 12 Stan. L. Rev. 256 (1959); Fry, *Disclosure of Informer-Participant's Identity*, 46 Calif. L. Rev. 467 (1958); Comentario, *Disclosure of Confidential Informant*, 71 Harv. L. Rev. 111 (1957). En *Roviaro* se procesó a un acusado por ocultar, transportar y vender narcóticos, en violación de la ley. En la transacción delictiva intervinieron varios agentes del orden público y un confidente. El acusado le vendió la droga al confidente. Antes del juicio el acusado solicitó que se le informase el nombre y la dirección del confidente. El Estado se opuso y el tribunal de instancia lo sostuvo en su negativa. Al revocar la sentencia el Tribunal Supremo[2] expresó que "Cuando la divulgación de la identidad del confidente, o del contenido de su comunicación, es relevante y de ayuda para la defensa del acusado, o es esencial para una determinación justa de la causa, el privilegio debe ceder."[3]

---

[2] Dos de sus jueces no intervinieron y uno disintió.

[3] "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." 353 U.S. 60–61.

Pero más adelante, a la página 62, dicho Tribunal resumió su discusión del asunto diciendo:

"Creemos que no se justifica establecer ninguna regla fija sobre la divulgación. El problema es tal que requiere sopesar de un lado el interés público en proteger el flujo de información y del otro el derecho del individuo a preparar su defensa. Si la no divulgación ha de resultar errónea dependerá de las circunstancias particulares de cada caso, tomando en consideración el delito imputado, las posibles defensas, la importancia posible del testimonio del confidente, y otros factores pertinentes." (4)

En otras palabras, cuando se invoca el privilegio del confidente surge un conflicto entre dos intereses igualmente importantes: el interés de los ciudadanos y de la comunidad en que se reduzca lo más posible la criminalidad mediante el efecto disuasivo que tiene el castigo de los violadores de la ley y el interés también de los ciudadanos y de la comunidad en que no se castigue a ningún inocente. Ante tal situación, parece decir el Tribunal Supremo de los Estados Unidos, hay que examinar cuidadosamente cada caso particular para hacer justicia. No puede establecerse una regla absoluta que nos libre de la "agonía de la decisión" y nos resuelva los casos *a priori*. Ésa, creemos, es la posición más sensata (*sensible*) pero es a la vez la más difícil. El últimamente citado párrafo de la opinión del caso de *Roviaro* en efecto nos dice: Procedan a su propio riesgo. Así tiene que ser. Los tribunales no podemos eludir el deber de decidir.

Visto lo anterior debemos ahora contestarnos estas dos preguntas: ¿Es la situación del caso de autos igual al de *Roviaro* y en consecuencia tenemos que concluir que se cometió el error señalado? Si no es igual, y examinadas las cir-

---

(4) "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U.S. 62.

cunstancias particulares del caso, ¿cuál debe ser el resultado de ese sopesar o balancear los intereses aquí en juego?

Contestando el primer interrogante que nos hemos planteado, concluimos que los casos no son iguales. Las diferencias pertinentes son las siguientes:

1) En *Roviaro* un testigo del Pueblo declaró que al ser arrestado el acusado y llevado al cuartel de la policía en Chicago y al ser confrontado con el confidente, el confidente negó conocer al acusado y dijo que jamás lo había visto (págs. 58 y 64 *in fine*). Ante esa situación no cabe duda de la importancia que tenía para el acusado conocer el nombre y dirección del confidente y ponerlo a declarar a su favor. Esta circunstancia no se da en el caso de autos.

2) En *Roviaro* el Estado se negó a identificar al confidente. Sólo se refirió a él como "John Doe." No así en el caso de autos en que el Pueblo suministró su nombre y apellidos verdaderos: Antonio Reyes Ríos. Ni el testigo Mestre ni el fiscal pudieron dar su dirección por no tener esa información en aquel momento, pero de la lectura del récord se desprende que la hubiesen dado de haberla tenido. ¿Qué razón había para ocultarla si el acusado conocía al confidente? Esto nos lleva a la tercera diferencia pertinente.

3) En *Roviaro* la posición del acusado era que no sabía quién era el confidente—pues el estado meramente lo denominó "John Doe"—y solicitó su nombre y dirección. En el caso de autos el acusado mismo declaró que conocía al confidente. Varios meses antes del hecho delictivo, en julio de 1960, el acusado le compró una cadena a Reyes Ríos. Aparentemente Reyes Ríos vivía o iba frecuentemente por el vecindario en que vivía y operaba el acusado—cerca del Caserío Puerta de Tierra—porque el acusado declaró que luego de la compra de la cadena él vio a Reyes Ríos por allí varias veces. Este hecho del acusado conocer al confidente, a nuestro juicio, unido a las otras diferencias que aquí apuntamos distingue este caso de *Roviaro*. Se ha resuelto que no

es error perjudicial negar la identificación solicitada si el acusado la conoce o si la ha obtenido por otros medios. *People* v. *Lazzara*, 281 P.2d 4, 5 (1955); *Sorrentino* v. *U.S.*, 163 F.2d 627, 629 *in fine* (1947); *People* v. *McShann*, 330 P.2d 33, 36 (1958). Para más jurisprudencia federal, de California, de Maryland y de Massachusetts véase 8 Wigmore, *On Evidence* (1961) pág. 766, escolio 6.

4) En *Roviaro* el acusado se hallaba sólo con el confidente durante el momento crucial. En el caso de autos el agente Mestre acompañó durante la transacción al confidente, estuvo presente durante la misma, declaró en el juicio y fue contrainterrogado por la defensa. Más aún, había otro testigo ocular, el agente Juan Santiago Meléndez, quien también declaró y fue objeto de contrainterrogatorio.

5) En *Roviaro* el acusado solicitó antes del juicio que se le suministrase la información deseada. En el caso de autos, al acusado solicitar la información en el acto del juicio y luego de obtener el nombre completo del confidente, unido esto a la circunstancia de que el acusado conocía al confidente, el acusado no solicitó tiempo alguno para citar o hacer citar al confidente o para entrevistarse con él. No solicitó una posposición del caso ni solicitó del tribunal que citase al confidente Antonio Reyes Ríos. Tampoco la defensa indicó al tribunal en qué sentido declararía el confidente si se le trajese a declarar.

6) En *Roviaro* la credibilidad de dos de los testigos principales del Estado, los agentes Durham y Fields, quedó algo afectada debido a una contradicción en la prueba relativa a si la heroína había sido encontrada por el policía Bryson o por el agente Durham.(⁵) Nada similar ocurrió en el caso de autos que echara sombras sobre las declaraciones de los testigos de cargo.

---

(⁵) "Although this discrepancy dealt with the relatively minor matter of who had first found the package, it also reflected upon the credibility of Durham and Fields, two of the Government's principal witnesses." 353 U.S. 64.

■ Se ha· escrito, creemos que con buen sentido, que ya que el juego limpio (*fairness*) es la base del derecho a la divulgación, los tribunales .deben adoptar la actitud flexible que implica la regla de *Roviaro*. Esa actitud hace posible que el problema de la divulgación se resuelva a la luz de los méritos de cada caso y aparentemente no requiere la revocación cuando la no divulgación no perjudicó realmente al acusado. Al proteger los derechos del acusado a un juicio justo, dice el autor que aquí citamos, los tribunales no deben olvidar tampoco la justicia para con el público y para con su interés en que se cumplan las leyes. Fry, escrito citado, en 46 Calif. L. Rev. 471. V. además Gustafson, *Have we created a Paradise for Criminals?* 30 So. Cal. L. Rev. 1 (1956).

■ A tenor con. el antes citado párrafo de la opinión en el caso de *Roviaro*, contentivo de la regla normativa que dicho caso establece, teniendo en mente las circunstancias de este caso particular, las cuales hemos expresado; tomando en consideración lo dañino y perverso que es el delito de traficar en drogas prohibidas—tráfico que por motivos de lucro destruye vidas humanas—; teniendo en mente la fortaleza de la prueba presentada y otros factores relevantes; sopesando los intereses individuales y sociales envueltos; y aunque en casos de confidentes-participantes (*participant-informers*) aplicaríamos la regla de *Roviaro* en el sentido de obligar al Estado a divulgar el nombre y la dirección del "confidente-participante" cuando hacerlo sea necesario para garantizarle la oportunidad al acusado de tener un juicio justo, resolvemos que en el caso de autos no se cometió el error señalado. ([6])

*Se confirmarán las sentencias apeladas.*

---

([6]) Sobre el privilegio del confidente (*informer's privilege*) véase la Regla 215 del Proyecto de Reglas de Evidencia (de Puerto Rico) de 1958 y el historial y comentarios que aparecen bajo dicha regla. A la fecha en que se preparó ese proyecto el Comité que las redactó no encontró ninguna decisión de Puerto Rico pertinente a ese asunto. 3 *Práctica Forense Puertorriqueña* 177 (1964), Equity Publishing Corp.