EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Salys Soto Santiago<br><br>Recurrido<br>────────────────────<br>El Pueblo de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Wilfredo Pérez González<br><br>Recurrido | Certiorari<br><br>2019 TSPR 164<br><br>203 DPR ____ |

Número del Caso: CC-2017-0674

Fecha: 6 septiembre de 2019

Tribunal de Apelaciones:

      Región Judicial de Mayagüez y Utuado

Oficina del Procurador General:

    Lcdo. Luis Román Negrón
    Procurador General

    Lcdo. Juan B. Ruiz Hernández
    Procurador General Auxiliar

Abogado de la parte recurrida:

    Lcdo. Harry Padilla Martínez

Materia: Derecho Probatorio - Análisis que deben hacer los tribunales cuando el Estado invoca el privilegio del confidente contenido en la Regla 515 de Evidencia.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Salys Soto Santiago<br><br>    Recurrido | |
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Wilfredo Pérez González<br><br>    Recurrido | CC-2017-0674 |

La Jueza Presidenta Oronoz Rodríguez emitió la Opinión del Tribunal

En San Juan, Puerto Rico, a 6 de septiembre de 2019.

En esta ocasión, nos corresponde realizar un delicado balance entre dos intereses de gran importancia para el Estado y la sociedad: la necesidad de promover que los ciudadanos comuniquen a las autoridades del orden público información pertinente sobre la comisión de un delito y el derecho de un acusado a preparar su defensa. Por un lado, los recurridos sostienen su derecho a conocer la identidad de la persona que alegadamente autorizó a agentes de la Policía a realizar ciertas vigilancias que sirvieron de base para las órdenes de registro y allanamiento que se expidieron con relación a este caso. Por otro lado, el Estado invoca el privilegio en cuanto a la identidad del confidente, Regla 515 de Evidencia, infra,

para proteger la identidad del ciudadano cooperador. Adelantamos que, ante las circunstancias particulares de este caso, los foros recurridos no podían ordenarle al Ministerio Público revelar la identidad del confidente.

I

Por hechos ocurridos el 16 de noviembre de 2012 y el 19 de abril de 2013 en el Barrio Espino en el Municipio de Las Marías, el Ministerio Público presentó varias denuncias por violación a los Artículos 401 y 412 de la Ley de Sustancias Controladas, 24 LPRA secs. 2401 y 2411b, contra Wilfredo Pérez González y Salys Soto Santiago (en conjunto, recurridos).[1] Se les imputó poseer con intención de distribuir varias bolsitas de marihuana y cocaína, en común y mutuo acuerdo, sin estar legalmente autorizados para ello. Igualmente, se les imputó a ambos la posesión de parafernalia consistente en balanzas electrónicas, bolsas plásticas con cierre a presión, trituradora, hojas de tabaco y potes plásticos.

Tras la determinación de causa probable en cuanto a todos los delitos imputados, se presentaron las acusaciones correspondientes.[2] Como parte del descubrimiento de prueba, la defensa obtuvo unos discos que contienen las grabaciones que tomaron los agentes investigadores de las transacciones de sustancias controladas que ocurrieron en la propiedad del señor Pérez González. El foro de instancia denegó una solicitud para descubrir la localización exacta desde la cual

---

[1] Contra el Sr. Wilfredo Pérez González se presentaron cuatro denuncias por el Art. 401 y dos por el Art. 412. Contra el Sr. Salys Soto Santiago se presentaron cuatro denuncias por el Art. 401 y una por el Art. 412. Apéndice, págs. 1-11.
[2] Apéndice, págs. 407-428.

se tomaron dichas grabaciones.[3]

Culminado el descubrimiento, comenzó el juicio en su fondo ante tribunal de derecho. El primer testigo del Ministerio Público fue el agente Carlos E. Ruiz Lugo (Agte. Ruiz). Este testificó sobre las diferentes vigilancias que sirvieron de base para las órdenes de registro y allanamiento y las consecuentes acusaciones en contra de los recurridos.[4] El Agte. Ruiz describió lo que observó personalmente los días 13 de agosto, 6 de septiembre, 17 de septiembre, 21 de septiembre, 5 de octubre y 19 de octubre de 2012, así como lo que observó en las grabaciones que tomó el agente Luis A. Marrero Vázquez (Agte. Marrero) el 31 de octubre del mismo año.

El Agte. Ruiz indicó que conocía el lugar objeto de las vigilancias porque había entrado a la propiedad en el 2011 como agente encubierto.[5] Narró que los días 13 de agosto, 6 de septiembre y 17 de septiembre observó muchos vehículos entrando y saliendo por la única entrada que tiene la residencia.[6] Para esas fechas, los agentes buscaban una mejor localización donde pudieran observar claramente las

_____

[3] Apéndice, pág. 38.
[4] El Agte. Ruiz explicó que, mientras su compañero se encargaba de las grabaciones, él observaba lo mismo a través de unos binoculares.
[5] El Agte. Ruiz describió el lugar como "una residencia de altos y bajos que tiene una marquesina eh que tiene una sola entrada en forma de, de cerradura que se entra por un lao' y se sale por el mismo lado. Tiene una quebrada que pasa por el frente de la, de la residencia. También tiene como un vivero de peces natural este que de la quebrá se llena. Hay unos peces, peces anaranjado, rojo y diferentes colores muy bonitos por cierto y unos pinos bien altos eh una planta de jobos…" Transcripción de la prueba oral (TPO), Apéndice, pág. 137, l. 7-18. Posteriormente explicó que hay dos estructuras, una ubicada a orillas de la Carretera 124 color "peach rosita", que es la residencia del Sr. Pérez González, y otra color crema, ubicada dentro del monte, que consiste en el punto de droga. Íd., págs. 147-148, 197-198, 227-228.
[6] Íd., págs. 126, 130-131.

transacciones de sustancias controladas.

El 21 de septiembre identificaron "un punto confidencial" en el cual sí se podían apreciar las transacciones.[7] Desde este nuevo punto de vigilancia observó el intercambio de bolsas plásticas transparentes color verde a cambio de dinero. A preguntas del fiscal, indicó que "[e]staba autorizado confidencialmente" a estar en el lugar.[8] Surge del testimonio del Agte. Ruiz que, desde el punto confidencial, se podía distinguir el color y los detalles de la ropa de los individuos que frecuentaron el lugar, las características distintivas del pelo, piel y aspecto físico de estos y, a base de su conocimiento y experiencia, el contenido de las bolsas plásticas transparentes. El Agte. Ruiz también pudo reconocer a los recurridos porque los había visto en el operativo que realizó en el 2011.

Las vigilancias del 5, 19 y 31 de octubre se realizaron en el mismo punto confidencial. Desde este lugar, el Agte. Ruiz escuchó en una ocasión que una voz al interior de la residencia llamó al señor Soto Santiago (Salys) y que él contestó "voy", antes de entrar. Asimismo, observó intercambios de dinero por bolsitas plásticas con sustancias controladas y varias personas fumando marihuana, inhalando polvos blancos y bebiendo ron. También observó personas contando dinero y una constante entrada y salida de vehículos. Las observaciones de los agentes fueron capturadas en los respectivos videos que se presentaron en el juicio. Según

---

[7] Íd., págs. 136-137.
[8] Íd., pág. 141, l. 12-13.

surge de la transcripción de la vista, ambos recurridos aparecen en las grabaciones. Como resultado de las vigilancias, el Agte. Ruiz concluyó que el señor Pérez González (Willy) es dueño del punto de droga, mientras que el señor Soto Santiago (Sally) es un vendedor.

Durante el contrainterrogatorio, la defensa inquirió sobre las características del área objeto de la vigilancia y la autorización que alegadamente tuvieron los agentes para estar en el lugar específico donde realizaron las vigilancias y las grabaciones. De igual forma, el abogado de los recurridos adelantó que había citado a todos los vecinos de la calle (Carr. 124), quienes le indicaron que no dieron permiso alguno para realizar las vigilancias.[9] Así las cosas, del testimonio del Agte. Ruiz surgió lo siguiente: la estructura allanada ubica en una zona montañosa, "típicamente boscosa" en la Carr. 124, Kms. 18.8 y 18.9; la carretera tiene dos carriles, uno de ida y uno de regreso, y no tiene paseo; entre la zona de rodaje que está en el kilómetro 18.9 y la residencia hay alrededor de 75 a 100 metros de distancia; la propiedad no se ve desde la carretera; y hay ocho residencias en el área, tres a mano derecha y cinco a mano izquierda.[10] Por otro lado, el Agte. Ruiz admitió que realizó entre 17 a 22 vigilancias adicionales a las que se detallaron en la declaración jurada que prestó para obtener la orden de

---

[9] Íd., pág. 331, l. 7-10. Cabe señalar que, según el Agte. Ruiz, hay ocho residencias en el barrio, mientras que la defensa citó a seis personas. TPO, Apéndice, pág. 297; *Moción urgente solicitando citación de testigo*, Apéndice, págs. 429-430.
[10] TPO, págs. 293-298.

registro y allanamiento.[11]

En cuanto a la autorización que tenían los agentes para realizar las vigilancias, el Agte. Ruiz indicó que obtuvo la primera autorización el 13 de agosto. No obstante, no utilizó esta autorización, sino que obtuvo una segunda el 17 de septiembre, que utilizó para las vigilancias subsiguientes.[12] Según el Agte. Ruiz, ambas autorizaciones eran iguales y las recibió de la misma persona.[13] El agente reconoció que no mencionó nada sobre las autorizaciones en su declaración jurada.[14]

Por otro lado, el Agte. Ruiz reveló que, cuando recibió la autorización, estaba acompañado por una "persona confidencial", "un cooperador" no remunerado con quien se reunió en varias ocasiones.[15] La defensa preguntó si este "cooperador" había obtenido la autorización para estar en el lugar donde se realizaron las vigilancias de un tercero, a lo que el agente respondió con un simple "No.". Luego de ello, el contrainterrogatorio se desarrolló de la siguiente forma:

> Lcdo. Padilla: ¿Y de quien la obtiene el cooperador?
> Agte. Ruiz: Eso es confidencial Vuestro Honor.
> Lcdo. Padilla: ¿Usted me podría decir el nombre?
> Agte. Ruiz: No, confidencial eso.
> Lcdo. Padilla: ¿Usted lo conoce?
> Agte. Ruiz: Sí lo conozco Vuestro Honor.
> Lcdo. Padilla: ¿Y sabe el nombre?
> Agte. Ruiz: Confidencial.
> Lcdo. Padilla: No, no la pregunta, ¿es si sabe el nombre? ¿Si sabe el nombre?
> Agte. Ruiz: ¿Si sé el nombre?
> Lcdo. Padilla: Su Señoría nosotros vamos a solicitar que se le ordene al agente.

---

[11] Íd., págs. 288-289.
[12] Íd., págs. 328-331.
[13] Íd., pág. 337.
[14] Íd., págs. 316, 331.
[15] Íd., págs. 341-343.

> Fiscal Rodríguez: Nosotros vamos a objetar su Señoría que se exponga a, el nombre de esa persona bajo la Regla 515 de [E]videncia su Señoría.[16]

La defensa arguyó que necesitaba la identidad del confidente -que alegadamente autorizó a los agentes a estar localizados en el lugar confidencial- para saber si estos tenían autorización para realizar las vigilancias o si, en cambio, invadieron la propiedad de los recurridos. Resaltó que desde la Carr. 124 no se podía ver actividad ilegal alguna. Por su parte, el Ministerio Público indicó que había un interés apremiante en mantener la confidencialidad de la identidad del informante y que revelar su nombre pondría en riesgo su vida. El Tribunal de Primera Instancia concedió la solicitud de la defensa. Acto seguido, el Ministerio Público solicitó al tribunal que notificara la minuta para recurrir de la determinación.

Así las cosas, el Ministerio Público presentó un recurso de *certiorari* en el Tribunal de Apelaciones. Señaló que el foro primario erró al ordenarle revelar el nombre del ciudadano que, de manera confidencial, ofreció información sobre la comisión de un delito y permitió que se realizaran las vigilancias desde el lugar confidencial. Arguyó que la identidad del ciudadano es información privilegiada conforme las Reglas de Evidencia, que el foro recurrido abusó de su discreción al ordenar su divulgación y que sostener tal determinación pone en riesgo la vida y seguridad del ciudadano y desincentiva que las personas ayuden al Estado en la lucha contra el crimen.

---

[16] Íd., págs. 344-345.

El foro apelativo intermedio expidió el recurso y confirmó al Tribunal de Primera Instancia. Razonó que, ante los hechos particulares que surgieron en la vista, la identidad del cooperador era necesaria para la defensa de los recurridos. Concluyó que el foro primario no abusó de su discreción al ordenar al Agte. Ruiz revelar el nombre del ciudadano que le autorizó ubicarse en determinado lugar para realizar las vigilancias que desembocaron en la presentación de cargos criminales contra los recurridos. Resaltó la topografía montañosa y boscosa del lugar que impedía detectar la actividad delictiva desde la carretera, la ausencia de mención o referencia alguna en la declaración jurada de la autorización que tenían los agentes, la omisión de múltiples vigilancias adicionales en la declaración jurada, así como la citación de los vecinos del área quienes alegadamente no dieron permiso a los agentes.[17]

Aún inconforme, el Ministerio Público, representado por la Oficina del Procurador General, acude a este Tribunal y solicita que se revoque a los foros recurridos. Arguye que la identidad del confidente es privilegiada y, de revelarse, pondría en riesgo su vida y seguridad. Sostiene que ello tendría un efecto disuasivo sobre las personas que interesan cooperar con las autoridades. Afirma que la identidad del confidente no es necesaria para determinar si el Agte. Ruiz

---

[17] El Juez Figueroa Cabán emitió un Voto Disidente en el cual razonó que la defensa no demostró la necesidad de conocer la identidad del confidente, no se ha menoscabado su derecho a realizar un contrainterrogatorio efectivo por ignorar el nombre del confidente y tiene "suficientes elementos para considerar probado la ilegalidad de las vigilancias sin tener que proveer información confidencial y privilegiada, a saber: la identidad del informante". Apéndice, págs. 506-513.

realizó las vigilancias en la propiedad de un tercero que prestó su autorización o si penetró ilegalmente la propiedad de los recurridos. Además, señala que proteger la identidad del confidente no afecta el derecho a confrontar testigos ni es esencial para la justa decisión del caso, pues la defensa recibió los videos de las vigilancias y citó como testigos a los vecinos de los acusados. El Ministerio Público arguye que ello le permite a la defensa cuestionar al agente sobre el contenido de los videos e impugnar la credibilidad de su testimonio. Añade que meras suposiciones no son suficientes para que se ordene revelar el nombre del confidente, que el derecho de los acusados a descubrir prueba no es absoluto y que no se demostró que la identidad sea necesaria para la defensa adecuada de los recurridos.

Examinado el recurso, emitimos una Resolución en la cual ordenamos a la parte recurrida mostrar causa por la cual no procedía revocar a los foros recurridos en vista de la alegación del Procurador General en cuanto a la disponibilidad de otra prueba que permita establecer la ilegalidad de la vigilancia.

En su comparecencia, la defensa arguye que ante el testimonio plagado de omisiones, ambigüedades e imprecisiones del Agte. Ruiz, el Tribunal de Primera Instancia estaba obligado a ordenar la divulgación del nombre del alegado confidente. Asegura que su identidad es esencial para la defensa de los recurridos, ya que incide sobre la médula de la controversia: si el Agte. Ruiz estaba legalmente en el lugar confidencial donde se realizaron las vigilancias que se

detallan en la declaración jurada que se presentó para obtener las órdenes de registro y allanamiento. Además, señala que resolver en contra de la divulgación atenta contra la presunción de inocencia y el derecho de los recurridos a preparar su defensa.

Con el beneficio de la comparecencia de ambas partes, expedimos el recurso de *certiorari* y resolvemos.

II

**A. El derecho del acusado a preparar su defensa**

Toda persona acusada goza del derecho constitucional a preparar una defensa adecuada. Art. II, sec. 11 Const. ELA; Pueblo v. Custodio Colón, 192 DPR 567, 579 (2015). Consustancial a este derecho, nuestro ordenamiento también garantiza el derecho, aunque no absoluto, a descubrir prueba. Pueblo v. Arzuaga, 160 DPR 520, 530 (2003); Pueblo v. Santa Cruz, 149 DPR 223, 231 (1999); Pueblo v. Arocho Soto, 137 DPR 762, 766 (1994). Aunque las Reglas de Procedimiento Criminal abarcan principalmente el descubrimiento de prueba, la información que puede obtener la persona acusada antes y durante el juicio también está sujeta a la aplicabilidad de los privilegios evidenciarios que se reconocen en nuestro ordenamiento.

**B. El privilegio en cuanto a la identidad del confidente**

En nuestro ordenamiento se le reconoce al Estado el privilegio de no revelar la identidad de aquellas personas que suministren información a las autoridades sobre la violación de una ley. Pueblo v. López Rivera, 91 DPR 693 (1965). Desde

el 1979, nuestras reglas de evidencia han incorporado expresamente el privilegio en cuanto a la identidad del confidente, primero en la Regla 32 y actualmente en la Regla 515. 32 LPRA Ap. IV, R. 32 (derogada); 32 LPRA Ap. VI, R. 515. Ambas comparten esencialmente el mismo lenguaje y protegen la identidad del confidente siempre que la información se dé en confidencia a un funcionario del orden público, su representante, o un tercero con el propósito de que este transmita la información a las autoridades. Íd. El privilegio salvaguarda el interés público en promover que los ciudadanos compartan información sobre actividad contraria a la ley bajo la confianza de que su identidad no será revelada y su seguridad no será comprometida. Ahora bien, el privilegio no es absoluto y tiene que ceder cuando la identidad del confidente sea "esencial para una justa decisión de la controversia, particularmente cuando es **esencial a la defensa de la persona acusada**". 32 LPRA Ap. VI, R. 515 (énfasis suplido). Además, se limita exclusivamente a la identidad del confidente y no a la información que este brindó a las autoridades, a menos que permita identificar a la fuente. E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009: Análisis por el Prof. Ernesto L. Chiesa, Publicaciones JTS, San Juan, 2009, pág. 175.

El privilegio del confidente tiene vigencia en nuestro ordenamiento incluso antes de su incorporación en las reglas de evidencia. Pueblo v. López Rivera, 91 DPR 693 (1965). El caso normativo federal es Roviaro v. U.S., 353 US 53 (1957), adoptado por este Tribunal en Pueblo v. López Rivera, supra.

En Roviaro v. U.S., supra, la defensa solicitó al Estado que revelara la identidad de John Doe, quien participó en la transacción de sustancias controladas que motivó la radicación de cargos en contra de Albert Roviaro. En el juicio, uno de los agentes declaró que, cuando llevaron a Roviaro y a John Doe al cuartel, este último expresó que no conocía a Roviaro y que nunca lo había visto. Roviaro v. U.S., supra, pág. 58 n. 4. La Corte de Distrito denegó la solicitud para revelar la identidad de John Doe y sostuvo el privilegio. La Corte de Apelaciones confirmó.

La Corte Suprema Federal esbozó de forma general el análisis que deben hacer los tribunales cuando el Estado invoca el privilegio del confidente. Reconoció que no se justifica adoptar una norma fija respecto a la divulgación, sino que cada caso requiere hacer un balance entre el interés público en proteger el flujo de información y el derecho del acusado a preparar su defensa. Íd., pág. 62; Pueblo v. López Rivera, supra, pág. 700. Hacia dónde se inclina la balanza dependerá de las circunstancias particulares de cada caso, tomando en consideración los delitos imputados, las posibles defensas, la importancia que pueda tener el testimonio del informante y otros factores pertinentes. Íd. La Corte Suprema Federal determinó que la identidad y el posible testimonio de John Doe era material a la defensa de Roviaro debido a que este fue el **único participante**, además del acusado, en la transacción y el **único testigo** que tenía el potencial de abundar o contradecir el testimonio del agente del Estado. Roviaro v. U.S., supra, pág. 64. Resaltó que el delito

imputado, analizado en conexión con la evidencia que se presentó en el juicio, estaba estrechamente relacionado a John Doe, de forma que su identidad y testimonio eran altamente materiales ("highly material"). Íd., pág. 63.

En síntesis, el análisis de Roviaro v. U.S., supra, exige considerar: (1) **si el informante es un mero testigo o un participante en la transacción**; (2) **si el informante es un testigo esencial**, en el sentido de que puede aportar evidencia crucial para la determinación de la responsabilidad criminal del acusado, entiéndase lo relativo a la identificación del acusado, los hechos esenciales, la verdadera naturaleza de la transacción y la aplicabilidad de alguna defensa; y (3) **si el informante es el único testigo de defensa, aparte del acusado**, quien tiene derecho a no declarar, o si es testigo del Ministerio Público. E.L. Chiesa Aponte, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, San Juan, Publicaciones JTS, 2005, Tomo I, pág. 300. El peso de la prueba recae sobre la parte que promueve la solicitud, incluyendo al acusado. Íd., pág. 301.

La determinación en el caso de Roviaro v. U.S., supra, se conoce como la excepción del "confidente-participante" o "participant-informer rule". Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, op. cit., pág. 174; Pueblo v. Velázquez Colón, 174 DPR 304 (2008); Pueblo v. López Rivera, supra, pág. 699. El confidente-participante tiene un rol activo en los eventos que dan lugar a la acusación de delito. Se distingue del mero confidente o "mere tipster" quien únicamente suple información a las autoridades, pero no

participa en la transacción de la cual surge el delito. Pueblo v. Velázquez Colón, supra, pág. 341; Pueblo v. López Rivera, supra, pág. 699. Aunque esta distinción es importante, "el hecho de que el confidente sea participante no le concede al acusado un derecho automático a conocer su identidad". Pueblo v. Velázquez Colón, supra, pág. 341. La balanza tiende a inclinarse a favor del acusado cuando se trata de un confidente participante o cuando, a pesar de no ser participante, el confidente es el único testigo del crimen, además del acusado y los agentes del Estado. 2 M.H. Graham, Handbook of Federal Evidence, 6th ed., Sec. 510:1, pág. 276. Ahora, cuando se trata de un mero informante, es más difícil demostrar la necesidad de su testimonio y la balanza tiende a inclinarse a favor del privilegio del Estado.[18]

Tras adoptar la norma de Roviaro v. U.S., supra, este Tribunal se ha expresado sobre el privilegio en cuanto a la identidad del confidente en ocasiones contadas.[19] Distinto ha

---

[18] Véanse U.S. v. Hollis, 245 F.3d 671, 674 (8th Cir. 2001) ("the identity of a 'tipster' whose observation formed the basis for a search warrant but who is not a necessary witness to the facts is not subject to compulsion"); U.S. v. Gordon, 173 F.3d 761, 767-768 (10th Cir. 1999) ("We have refused disclosure in similar cases where the informant has limited information, was not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory. The Amtrak employee here simply provided a lead and in that sense was a mere "tipster" whose identity and testimony are unrelated to any issue in Gordon's case."); U.S. v. Lewis, 40 F.3d 1325, 1335-1337 (1st Cir. 1994) ("Where the informant is a "mere tipster," as opposed to an active participant in the offense charged, disclosure is required only in the exceptional case where it is vital to a fair trial. (…) The district court properly refused to order disclosure of the informant's identity. The record indicates that the informant was merely a tipster in the arrest of Lewis and Starks. The informer simply spoke with the police, first by telephone and then in person, to inform them that Lewis and Starks were carrying firearms in Pete & Mary's Bar. (…) The informer was not present at the scene of the arrest in the parking lot and, thus, was in no position to amplify, contradict, or clear up the testimony of any government witness.")

[19] En Pueblo v. López Rivera, 91 DPR 693, 701-702 (1965), determinamos que no procedía revocar la sentencia recurrida debido a que el Estado: (1) sí reveló el nombre y los apellidos del confidente; (2) el acusado conocía al

ocurrido en los tribunales federales y estatales que, en ocasiones innumerables, han pasado juicio sobre determinaciones que ordenan o prohíben revelar la identidad del confidente. En estos casos, el tribunal revisor tiene que evaluar si el foro recurrido abusó de su discreción. Véanse U.S. v. Robinson, 144 F.3d 104, 106 (1st Cir. 1998); U.S. v. Gray, 47 F.3d 1359, 1363 (4th Cir. 1995); U.S. v. Beals, 698 F.3d 248, 269 (6th Cir. 2012); U.S. v. Mathis, 357 F.3d 1200, 1208 (10th Cir. 2004). Así, las cortes han precisado qué debe alegar y demostrar la defensa para que la balanza se incline a su favor y se ordene revelar la identidad del confidente.

Ciertamente, la solicitud no puede estar basada en meras conjeturas ni especulaciones. "The defense has the heavy burden of coming forward with evidence to make a plausible threshold showing of a basis in fact establishing a reasonable possibility that the informer has personal knowledge of the facts on the merits of the case. Unsupported assertions or

---

confidente y; (3) distinto a Roviaro, **otras personas estuvieron presentes durante la transacción y otro testigo ocular declaró y fue objeto de contrainterrogatorio.** Luego, en Pueblo v. Acosta Escobar, 101 DPR 886 (1974), aunque discutimos el privilegio, denegamos su aplicación porque uno de los testigos de cargo reveló la identidad del confidente, sin objeción alguna. En Benítez v. Tribunal Superior, 102 DPR 601 (1974), rechazamos ordenar al Ministerio Público revelar la identidad del confidente participante, pero sí le ordenamos revelar la identidad del individuo que llevó al confidente y al agente encubierto a la casa del acusado para realizar una transacción de sustancias controladas. En ese caso, **sostuvimos la aplicación del privilegio en cuanto al confidente debido a que la defensa tendría la oportunidad de contrainterrogar al agente encubierto y al otro individuo para fortalecer su defensa.** Además, el individuo también serviría como testigo de coartada. De otra parte, resaltamos que quien concretizó el encuentro entre el agente encubierto y el acusado fue el individuo y no el confidente participante. Íd., pág. 605. Más recientemente, repasamos la norma de Roviaro v. U.S., 353 US 53 (1957), aunque no en el contexto del privilegio en cuanto a la identidad del confidente, sino sobre una solicitud para descubrir un alegado acuerdo de inmunidad que se suscribió con la confidente. Véase Pueblo v. Velázquez Colón, 174 DPR 304 (2008).

vague references of need do not suffice." Imwinkelried, 2-6C The New Wigmore: A Treatise on Evidence: *Evidenciary Privileges*, 3rd ed., Sec. 7.3.2, pág. 1520 (2017) (notas al calce omitidas).[20] Si hay otros testimonios o prueba de la defensa que pueden cumplir el mismo propósito que el que se persigue con la identidad del confidente, la balanza se inclina en contra de la divulgación.[21] En la medida en que otros testigos de los hechos constitutivos del delito estén disponibles, no se favorecerá revelar la identidad del confidente. En fin, "el acusado deberá establecer un caso *prima facie* de la necesidad de la evidencia, bajo los parámetros de *Roviaro*, esto es, que revelar la identidad del informante es esencial para su defensa". Chiesa Aponte, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, supra, pág. 301.

Ante el reto que presenta realizar el balance de Roviaro v. U.S., supra, y las posibles implicaciones de tomar una decisión errónea, las cortes han optado por incorporar un paso intermedio antes de resolver si se debe revelar la identidad

---

[20] Véanse además, U.S. v. Estrella, 567 F.2d 1151, 1153 (1st Cir. 1977) ("mere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity"); U.S. v. Mathis, 357 F.3d 1200, 1208 (10th Cir. 2004) ("[m]ere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure"); U.S. v. Ray, 803 F.3d 244, 273-274 (6th Cir. 2005) ("[m]ere conjecture or supposition about the possible relevance of the informant's testimony is insufficient to warrant disclosure").

[21] Jones v. State, 658 S.E.2d 386, 389 (Ga. Ct. App., 2008) (El tribunal recurrido no erró al denegar la solicitud para revelar la identidad del confidente, ya que no se demostró que solo mediante su testimonio era posible cuestionar el testimonio del agente.); Villegas v. State, 546 S.E.2d 504, 506 (Ga. 2001)(El foro primario no erró al denegar la solicitud para revelar la identidad del confidente que era un mero informante, no participó de los hechos y no se probó que fuese el único testigo capaz de proveer testimonio relevante y exculpatorio.)

del confidente: el examen en cámara.[22] Aunque la defensa establezca un caso *prima facie*, la práctica prevaleciente es que los tribunales **no ordenan inmediatamente** divulgar la identidad del confidente, sin antes realizar un examen en cámara. Imwinkelried, supra, págs. 1523-1524. Es importante enfatizar que la necesidad de un examen en cámara no se activa automáticamente ante una solicitud para revelar la identidad del confidente. Para que se ordene válidamente un examen en cámara, es fundamental que se demuestre *prima facie* la necesidad del testimonio. Esto requiere demostrar algunas de las siguientes circunstancias: (1) el informante tiene información relevante, material y exculpatoria; (2) el informante no está disponible a la defensa, a menos que se revele su identidad; (3) el informante fue un participante activo en el crimen; y (4) el interés del gobierno en mantener la confidencialidad es leve. T.A. Mauet, Informant Disclosure and Production: A Second Look at Paid Informants, 37 Ariz. L. Rev. 563, 569-570 (1995) (notas al calce omitidas). "After making this threshold showing of need, the trial court will likely conduct an *in camera* inspection to determine whether disclosure of an informant's identity is warranted under *Roviaro*." Íd.

El examen en cámara se dirige a examinar la participación del informante, su relación con el Estado, la

---

[22] El profesor Chiesa Aponte favorece el examen en cámara, siempre que el acusado logre persuadir al tribunal de su necesidad. Asimismo, indica que el acusado no debe estar presente en la vista en cámara, aunque sí su abogado. E. L. Chiesa Aponte, Tratado de Derecho Probatorio: Reglas de Evidencia de Puerto Rico y Federales, San Juan, Publicaciones JTS, 2005, Tomo I, pág. 302.

información que este compartió y su posible utilidad a la defensa del acusado. Usualmente, se limita a las declaraciones juradas de los agentes involucrados en el caso, las cuales deben someterse en sobre sellado. No obstante, en ocasiones, el tribunal puede optar por examinar al propio confidente si está disponible y se conoce su paradero. M.H. Graham, supra, pág. 275. El propósito del examen es conocer si el confidente puede proveer información esencial respecto a los hechos constitutivos del delito o la aplicabilidad de una defensa (como sería el entrampamiento o que el testigo identificó erróneamente al acusado).[23] El examen también resulta útil cuando se impugna la legalidad de un registro o allanamiento, por ejemplo, cuando se cuestiona la existencia del confidente o la naturaleza de la información que este brindó a las autoridades. McCormick on Evidence, 7th ed., Vol. 1, Sec. 111, pág. 672 (2013).

Algunos tribunales realizan el examen en cámara en ausencia de la persona acusada, su representante legal y el Ministerio Público. En estos casos, se da una oportunidad a la defensa para someter preguntas que el juez o jueza deberá leer al confidente. Imwinkelried, supra, pág. 1525. Acto seguido,

---

[23] Por ejemplo, en U.S. v. Spires, 3 F.3d 1234 (9th Cir. 1993), se dejó sin efecto la orden de la corte de distrito que denegó un examen en cámara para determinar si procedía revelar la identidad del confidente y se devolvió el caso al foro primario para la celebración de la vista en cámara. Spires sospechaba que el confidente era su *roommate* y arguyó que las armas y drogas incautadas pertenecían a este. El Noveno Circuito concluyó que el examen en cámara era pertinente para la defensa del acusado:

> In this case, Spires made the requisite minimal showing. One theory of his defense is that the weapons and drugs that the police seized belonged to his roommate. If the roommate was the informant, that fact would be relevant to the jury's determination whether Spikes knowingly possessed the firearms, drugs, and related paraphernalia. Íd., págs. 1238-1239.

tomará nota de las respuestas del confidente y luego las repetirá para récord en presencia de las partes (claro está, sin revelar la identidad si tal divulgación no procede). Consecuentemente, se le permite a la defensa utilizar las respuestas para contrainterrogar a otros testigos. Otros tribunales permiten la presencia del Ministerio Público, mas no de la defensa, aunque estos pueden someter preguntas por escrito. Íd. Otros tribunales excluyen a la persona acusada, pero permiten la participación del Ministerio Público y la defensa. Para evitar que este último comunique a su cliente el nombre del confidente, el tribunal emite una orden protectora. Imwinkelried, supra, pág. 1525.[24] Si, luego del examen, el tribunal concluye que el testimonio del confidente no ayudará a la defensa de la persona acusada o su valor será marginal o acumulativo, denegará la solicitud. Íd., pág. 1526.

Expuesto el derecho aplicable, resolvemos.

III

Luego de evaluar las razones por las cuales los recurridos solicitan la identidad del confidente, concluimos que estos no probaron que esa información es esencial para su defensa. En particular, la solicitud se basa en tres premisas: (1) el área objeto de las vigilancias no es visible desde la carretera; (2) los vecinos del área comunicaron que no dieron permiso para realizar las vigilancias, por tanto; (3) no existe el alegado cooperador y los agentes invadieron la

---

[24] Para un resumen de los distintos tipos de exámenes en cámara, véase U.S. v. Savage, 969 F. Supp. 450 (E.D. Michigan, 1997) y Z.Z. Gutierrez Pérez, Piercing the Veil of Informant Confidentiality: The Role of In Camera Hearings in the Roviaro Determination, 46 Am. Crim. L. Rev. 179, 204-205 (2009).

propiedad de los recurridos cuando realizaron las vigilancias. Aunque se pasó prueba sobre la primera, la segunda consiste en una mera alegación del representante legal de los recurridos, por lo que no se puede sustentar la tercera. Los vecinos no han testificado, aunque sí fueron citados, y la defensa no ha presentado declaraciones juradas que acrediten la alegación del representante legal de los recurridos. Esos testimonios podrían sustentar la alegación de la defensa con relación a la ilegalidad de la vigilancia sin necesidad de revelar la identidad del confidente. De igual forma, cabe mencionar que el Ministerio Público sometió los videos de las vigilancias junto con el testimonio del Agte. Ruiz. La defensa puede utilizar las grabaciones para sustentar su argumento respecto a la verdadera localización de los agentes.

De otra parte, según el Agte. Ruiz, el confidente es un cooperador que no participó de las transacciones observadas y que brindó información a los agentes y les permitió realizar las vigilancias en el lugar confidencial. Cabe señalar que no tenemos conocimiento de qué información ofreció el confidente, pues ello no fue objeto del contrainterrogatorio de la defensa (que se interrumpió ante la controversia que aquí atendemos). Igualmente, resaltamos que la información que brinda un confidente no es privilegiada, siempre que esta no revele su identidad.

En fin, al aplicar los criterios de Roviaro v. U.S., supra, la defensa no demostró la necesidad de revelar la identidad del confidente. Primero, la solicitud recae sobre una persona que no participó de las transacciones que

observaron los agentes. Segundo, no se probó que el confidente fuese un testigo esencial que pueda aportar evidencia crucial en cuanto a la responsabilidad criminal de los recurridos. De hecho, la defensa solicitó que se revele la identidad del confidente, pero no esbozó un interés en citarlo como testigo. Tampoco sabemos qué información brindó el confidente a los agentes. Tercero, el confidente no es el único testigo de defensa, aparte del acusado, que puede declarar en torno a la supuesta ilegalidad de las vigilancias. La defensa aún tiene disponible el contrainterrogatorio, que se interrumpió ante la controversia que aquí atendemos. Además, tiene los videos de las vigilancias y el testimonio de los seis vecinos del barrio, quienes aún no han declarado.

De igual forma, la solicitud de la defensa está basada en conjeturas y especulaciones. La teoría de los recurridos es que no existe un confidente y que los agentes penetraron ilegalmente su propiedad; ello, debido a que las propiedades no son visibles desde la Carr. 124. Tal suposición no es suficiente para inclinar la balanza a su favor y obligar al Estado revelar la identidad del confidente. Por su parte, el Estado esbozó la necesidad de proteger la vida y la seguridad del confidente y promover que los ciudadanos tengan la confianza de informar a las autoridades sobre actividad delictiva.

Por tanto, el foro primario erró al conceder la solicitud para revelar la identidad del confidente. En última instancia, si el tribunal entendía que la defensa había cumplido con el peso de la prueba y estaba ante un caso *prima facie*, este

debía ordenar un examen en cámara del confidente u ordenar a los agentes a someter una declaración jurada en sobre sellado detallando la identidad del confidente, la información que brindó y su participación en las vigilancias, si alguna. Solo después de tal examen y concluir que la identidad es esencial para la defensa, podía conceder la solicitud. Reiteramos que, ante los hechos particulares del caso, en este momento no procedía ordenar que se divulgue el nombre del confidente a base de una alegación, no sustentada, de la defensa.

## IV

Por todo lo anterior, se expide el recurso de *certiorari* y se revocan las determinaciones de los foros recurridos. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme con lo resuelto.

Se dictará sentencia de conformidad.


                                  Maite D. Oronoz Rodríguez
                                       Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Salys Soto Santiago<br><br>    Recurrido<br><br>El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>        v.<br><br>Wilfredo Pérez González<br><br>    Recurrido | CC-2017-0674 | |

SENTENCIA

En San Juan, Puerto Rico, a 6 de septiembre de 2019.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se expide el recurso de *certiorari* y se revocan las determinaciones de los foros recurridos. Se devuelve el caso al Tribunal de Primera Instancia para que continúen los procedimientos conforme con lo resuelto.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo concurren sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez disiente por entender que la Opinión del Tribunal, innecesaria e inopinadamente establece que cualquier planteamiento por frívolo que sea, mediante el cual se procure descubrir la identidad de un confidente/informante de la Policía de Puerto Rico, requiere seguir el procedimiento riguroso adoptado por el Tribunal.


                    Sonnya Isabel Ramos Zeno
              Secretaria del Tribunal Supremo Interina