El Pueblo de Puerto Rico, demandante y apelado, *v.* Ángel M. Acosta Escobar, acusado y apelante.

*Número:* CR-73-29      *Resuelto:* 18 de enero de 1974

*Benigno Alicea Alicea,* abogado del apelante; *Myriam Naveira de Rodón, Procuradora General,* y *Roberto Armstrong, Jr., Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

Contra Ángel M. Acosta Escobar se presentó ante el Tribunal Superior, Sala de San Juan, acusación imputándole tres cargos por infracción a la anterior Ley de Narcóticos de Puerto Rico, 24 L.P.R.A. sec. 973 y siguientes, por alegada (1) posesión, (2) ocultación y transportación y (3) venta de la droga narcótica conocida como heroína. Llamado el caso para juicio el acusado hizo alegación de inocente y se sometió a tribunal de derecho luego de que su renuncia a juicio por jurado fuera aceptada como válidamente hecha.

La prueba de cargo situó a un agente encubierto de la División de Drogas y Narcóticos de la Policía, acompañado de un confidente, a eso del medio día del 13 de octubre de 1970, frente a la casa 46 de la calle República en la Parada 22 de Santurce, donde fueron ambos en busca del apelante. Allí llamaron al apelante hacia el vehículo en que ambos viajaban. El confidente lo presentó al agente y le preguntó "si él tenía material," produciéndose a continuación una transacción entre el agente y el apelante, en presencia del confidente, consistente en la compra por aquél a éste de cuatro paquetes conteniendo en total 101 *decks* de heroína, así denominados. Tres paquetes contenían 25 *decks* cada uno. El cuarto paquete contenía 26 *decks*. El agente pagó $180 por los cuatro paquetes.[1] El confidente fue identificado en el testimonio del agente como un tal Cheo, un hombre de 25 ó 30 años de edad, con quien hizo siete u ocho transacciones similares, todas en la vecindad de la Parada 22. El supervisor del agente, sargento

---

[1] Es de notarse que según su testimonio el precio acordado fue $40 el paquete, por lo que debió pagar $160 y no $180 como atestiguó.

Domingo Álvarez, identificó al tal Cheo como José Colón, con dirección en calle Gaviota Final, Parada 20 en Santurce.

Concluida la prueba de cargo el apelante solicitó del tribunal sentenciador que citara a José Colón. El tribunal se negó a ello bajo el razonamiento de que dicha persona no resultaba ser un confidente participante conforme definimos dicho término en *Pueblo* v. *López Rivera*, 91 D.P.R. 693 (1965). El apelante procedió entonces a someter el caso sin presentar prueba y el tribunal de instancia le declaró culpable y convicto de los tres cargos que le eran imputados, sentenciándolo a cumplir de ocho (8) a quince (15) años de presidio en cada caso, a servirse concurrentemente entre sí.

El acusado apeló e imputa ante nos la comisión de un solo error por la Sala sentenciadora, a saber, "Negarse a citar al acto del juicio al confidente José Colón."

La cuestión de si se trataba aquí de un confidente informante o de un confidente participante carecía de importancia y no era por tanto decisiva para resolver si debía o no ordenarse la citación solicitada. Dijimos en el citado caso de *López Rivera*, supra, a la pág. 696 que el llamado " 'privilegio del confidente' (*informer's privilege*) es en realidad el privilegio del Estado de no divulgar la identidad de aquellas personas que suministran a las autoridades información sobre violaciones de la ley." En el caso de autos el Estado no hizo objeción alguna cuando el abogado defensor interrogó a los testigos de la acusación respecto de la identidad del confidente. Tampoco se mostraron remisos dichos testigos a dar dicha información.

■ Las razones que justifican el privilegio del Estado de no revelar la identidad del confidente dejaron de tener virtualidad desde el momento mismo en que quedó descubierta dicha identidad por el testimonio cándidamente ofrecido por los testigos del Estado. No consideraron ellos ni tampoco el fiscal, que identificarlo habría de militar contra el interés general ni que con ello correría riesgo personal el confidente. *Pueblo* v. *López Rivera*, supra, pág. 697, y casos allí citados.

■ La Constitución del Estado Libre Asociado de Puerto Rico dispone mandatoriamente en su Carta de Derechos, Art. II, Sec. 11, en su primer párrafo como sigue:

"En todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma, a carearse con los testigos de cargo, *a obtener la comparecencia compulsoria de testigos a su favor,* a tener asistencia de abogado, y a gozar de la presunción de inocencia." (Énfasis nuestro.)

El derecho de todo acusado a obtener la comparecencia compulsoria de testigos a su favor está también garantizado por la Constitución federal en su Enmienda Sexta, y se ha reconocido que es un derecho de naturaleza fundamental y obligatorio para los estados. *Chambers* v. *Mississippi,* 410 U.S. 284, 302 (1973); *Webb* v. *Texas,* 409 U.S. 95, 98 (1972); *Washington* v. *Texas,* 388 U.S. 14 (1967). Véase Antieau, *Modern Constitutional Law,* vol. 1, sec. 5:8.

Ese derecho no está limitado a determinada etapa del juicio. Es deseable que la solicitud para que se ordene la citación de testigos se haga antes del juicio. Con ello se facilita el trámite de su diligenciamiento sin causar dilaciones innecesarias y sin obstaculizar el desarrollo normal del proceso. Ello implica además menos inconvenientes para las personas citadas, dándoles tiempo necesario para hacer aquellos ajustes que les permitan comparecer al tribunal y descargar su responsabilidad ciudadana como testigos. Empero, una solicitud como la que nos ocupa, no puede ser denegada sin violentar el mandato expreso de nuestra Constitución a menos que resulte irrazonable bajo las circunstancias en que sea hecha.

El derecho a obtener la comparecencia compulsoria de testigos está íntimamente relacionado con el debido procedimiento de ley, y ha sido reconocido y mantenido por este Tribunal desde mucho antes de la vigencia del actual sistema constitucional. Así, en *Pueblo* v. *Román,* 5 D.P.R. 8, 10 (1903), resolvimos que constituyó error que hacía necesaria la anula-

ción de una sentencia contra dos acusados convictos de violación, la negativa del tribunal de instancia a hacer comparecer ante el tribunal a dos mujeres para que fueran reconocidas por un testigo. La petición no era irrazonable por cuanto las dos mujeres eran las supuestas perjudicadas y pudieron ser a las que se refirió el testigo como las que vio andar tranquilamente del brazo de los acusados.

Un año más tarde en *Pueblo* v. *Pérez*, 7 D.P.R. 354 (1904), resolvimos que constituyó error suficiente para justificar la revocación de una convicción por el delito de seducción la negativa del tribunal sentenciador a ordenar la citación de un testigo presencial por el hecho de que dicho testigo aparecía ser un niño y había la duda de si tenía capacidad bastante para declarar sobre los hechos que se investigaban.

En varias ocasiones nos hemos referido a la facultad del tribunal sentenciador para acceder a ordenar citar testigos en situaciones como las que presenta este caso como una facultad discrecional. A poco que se analicen los casos en que así lo hemos resuelto resulta clara la distinción entre aquellos y el de autos. Veamos.

En *Pueblo* v. *Ayende*, 39 D.P.R. 243, 244 (1929), resolvimos que no abusó de su discreción el tribunal sentenciador al negarse a ordenar la citación de una testigo, cuando la solicitud no se hizo antes de comenzar el juicio y sí luego de declarar el acusado, desprendiéndose de su testimonio que conocía a dicha testigo porque vivía con él. Además, habiendo declarado que nadie presenció los hechos por los que era juzgado la testigo no resultaba ser esencial.

En *Pueblo* v. *Báez*, 44 D.P.R. 54, 63 (1932), sostuvimos que la actuación del tribunal de instancia negándose a ordenar la citación de cuatro personas por el hecho de que fueron mencionadas por el fiscal como presentes en un juicio anterior contra el acusado, sin que se informara por éste el propósito de la citación solicitada, no constituyó abuso de discreción. In-

dicamos, además, que en realidad una de las cuatro personas compareció posteriormente y fue examinada por el acusado.

En *Pueblo* v. *Sarria Pacheco*, 57 D.P.R. 882, 892 (1941), dijimos que no abusó de su discreción el juez sentenciador al denegar una solicitud, hecha después de haber desfilado la prueba de cargo y de descargo en un juicio "bastante largo" para citar al Director del Manicomio de Río Piedras para comparecer a un juicio celebrándose en Ponce. Señalamos además que lo que se pretendía probar con dicho testigo—que una hermana del acusado hacía diez años que estaba recluida como paciente del Manicomio Insular—fue probado mediante el testimonio del propio acusado.

En *Pueblo* v. *Cintrón*, 58 D.P.R. 384, 391 (1941), sostuvimos que actuó correctamente el juez sentenciador al negarse a suspender el juicio luego de haber terminado la prueba de cargo y la de descargo para citar a un testigo cuya declaración no hubiese llenado la laguna que existía en la prueba del acusado para sentar bases para la admisión del testimonio de un perito. Dijimos, además, que no se demostró si el testigo estaba en Arecibo, ciudad donde se celebraba el juicio, o en Ponce, ciudad a la que supuestamente se había trasladado.

En *Pueblo* v. *Díaz Cintrón*, 91 D.P.R. 146, 152 (1964), sostuvimos que no hubo perjuicio para el acusado en la negativa a citar una testigo luego de comenzado el juicio cuando al reanudarse la sesión por la tarde su abogado informó que la testigo se negó a comparecer pero que presentaría otra persona en su lugar y de hecho presentó a otra testigo que declaró lo que la primera hubiera declarado.

En *Pueblo* v. *Vélez Torres*, 98 D.P.R. 5 (1969), señalamos a la pág. 7, que no cometió error el tribunal sentenciador "al negarse a ordenar al fiscal a traer al acto del juicio" al confidente, porque: "El récord demuestra, contrario a lo alegado por la defensa, que ésta no solicitó del tribunal la citación del

confidente a pesar de que el fiscal le ofreció cualquier información para localizarlo." (²)

Ninguna de las circunstancias que explicaron a satisfacción de este Tribunal la negativa a ordenar la citación de testigos después de comenzado el juicio está presente en este caso. Al contrario, el testigo José Colón, según el testimonio de los dos agentes, era persona conocida en el área en que supuestamente ocurrieron los hechos, y vivía en la Parada 20, un lugar que no dista mucho del recinto del Tribunal Superior en que se ventilaba el caso.

█ Quizás el esfuerzo por localizar a José Colón hubiese sido infructuoso, pero quizás no. El derecho constitucional del apelante a obtener la comparecencia compulsoria de testigos a su favor hubiese estado mejor servido si se hubiese hecho el pequeño esfuerzo de tratar de localizar al testigo. No podemos pasar por alto que la única prueba que en este caso conectó al apelante con la comisión de los delitos de que fue convicto y por los que fue sentenciado a cumplir de 8 a 15 años de presidio fue la declaración del agente encubierto. Aunque la ley no exige que la declaración del agente encubierto sea corroborada, si existe y está al alcance del Ministerio Público prueba de su corroboración y ésta no se produce ni se ofrece una explicación satisfactoria para tal omisión, debe tomarse con cautela el testimonio del agente encubierto. (³) Nada menos se debe

---

(²) Lo que a renglón seguido aparece, al efecto de que por haber testificado como prueba de cargo un agente que estuvo presente durante la transacción y por haber sido contrainterrogado extensamente, la citación del confidente no resultaba indispensable para el acusado, constituye un *dictum* que debe considerarse revocado.

(³) Conforme a la Ley de Evidencia se presume que toda prueba "voluntariamente suprimida resultará adversa si se ofreciere". 32 L.P.R.A. sec. 1887, inciso 5. Véase además 32 L.P.R.A. sec. 1679, especialmente el último párrafo que lee:

"La evidencia deberá estimarse no sólo por su valor intrínseco, sino también con arreglo a la prueba que una parte estuviere en aptitud de presentar, y la otra de contradecir; y por tanto si se ofreciere evidencia más débil y menos satisfactoria, cuando pareciere que la parte estaba en aptitud de ofrecerla más firme y satisfactoria, la evidencia ofrecida deberá mirarse con sospecha."

exigir frente a la importancia de los valores que en tales circunstancias están a merced de que se crea al agente encubierto. Véase *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973). *Cf. Pueblo* v. *Flores Berty*, 92 D.P.R. 577, 580–581 (1965).

■ Descorrido el velo que oculta la identidad del confidente, cumplido ya su oficio, constituye abuso de discreción no acceder a una solicitud oportunamente hecha por el acusado para que se le cite, a menos que existan razones que justifiquen tal negativa. La solicitud fue hecha en el caso que nos ocupa cuando quedó revelada la identidad del confidente. He ahí la primera oportunidad que tuvo el apelante para hacer la solicitud. Nada hay en los autos que justifique la negativa del tribunal sentenciador.

Se dictará sentencia revocando *la dictada por el Tribunal Superior, Sala de San Juan, y ordenando la celebración de un nuevo juicio.*

