ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>CIELO IRIS COLÓN CARTAGENA<br><br>Apelante | KLAN202300662 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Caso núm.: J1CR202300018<br><br>Sobre: Art. 108 del Código Penal |

Panel integrado por su presidente el Juez Pagán Ocasio, el Juez Marrero Guerrero y el Juez Campos Pérez[1]

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de abril de 2024.

Comparece la Sra. Cielo Iris Colón Cartagena, mediante un recurso de *Apelación*, y nos solicita la revocación de una *Sentencia de Cárcel Suspendida y Libertad a Prueba* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (en adelante, TPI) el 12 de julio de 2023. En referido dictamen, la Sra. Cielo Iris Colón Cartagena fue encontrada culpable por el delito de agresión y sentenciada a cumplir seis meses de cárcel bajo el régimen de sentencia suspendida.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia de Cárcel Suspendida y Libertad a Prueba.*

**I.**

El 19 de diciembre de 2022 se presentó contra la Sra. Cielo Iris Colón Cartagena una *Denuncia* por el delito de agresión tipificado en el Artículo 108 del Código Penal de Puerto Rico,

_____

[1] Mediante Orden Administrativa OATA-2023-212 se designó al Hon. José I. Campos Pérez en sustitución del Hon. Roberto J. Sánchez Ramos.

Número Identificador

SEN2024_____

33 LPRA sec. 5161, según enmendado.[2]  Los hechos del presente recurso tienen su génesis por un incidente ocurrido el lunes, 5 de diciembre de 2022.

La denuncia presentada leía de la siguiente manera:

**JICR202300018**

La referida acusada, Cielo Iris Colón Cartagena, allí y entonces ilegal, maliciosa y con la intención criminal a sabiendas en la fecha, hora y lugar, mientras la señora Irma E. Alvarez Rosario se disponía a dejar sus nietos menores de edad en la Escuela Angela Cordero Bernard, como está estipulado en la orden del Tribunal, la acusada, y madre de estos menores, se le acerco y mientras le reclamaba alterada por el uniforme escolar de estos la empuja por el hombro derecho [**y como consecuencia de esto, perdió el balance y se dio en la cabeza, en la parte posterior, lado derecho, recibiendo una lesión**][3] y mientras le manifiesta "eres una irresponsable, so puerca, so sucia", simultáneamente baja a el menor de 4 años del vehículo de la querellante y se aleja. Hechos contrarios a la Ley.[4] (Énfasis suplido)

Luego de algunos incidentes procesales, el juicio fue pospuesto para el 25 de mayo de 2023 a las nueve de la mañana.[5] Así las cosas, el 22 de mayo de 2023 la Sra. Cielo Iris Colón Cartagena presentó una *Moción solicitando citación de testigos*.[6]  En síntesis, la acusada solicitó al TPI que citara para testificar a las siguientes personas:

a. Sr. Soto
Trabajador Social
Escuela Elemental Angela Cordero Bernard
Calle Solimar, Urb. Villa del Carmen, Ponce, PR

b. Sra. Leticia Maldonado
Maestra
Escuela Elemental Angela Cordero Bernard
Calle Solimar, Urb. Villa del Carmen, Ponce, PR

c. Luis Marcucci
Guardia de Seguridad
Escuela Elemental Angela Cordero Bernard
Calle Solimar, Urb. Villa del Carmen, Ponce, PR

---

[2] Apéndice de la parte apelada, en el Anejo I, págs. 1-2.
[3] Hechos enmendados por el Ministerio Público el 25 de mayo de 2023, bajo el fundamento de la Regla 38 (a) de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 38. Véase Transcripción de la Prueba Oral (en adelante, TPO), 25 de mayo de 2023, págs. 24-29.
[4] Apéndice de la parte apelada, en el Anejo I, págs. 1-2.
[5] Apéndice de la parte apelada, en el Anejo II, pág. 3.
[6] Apéndice de la parte apelada, en el Anejo III, pág. 4.

d. Sicóloga Escolar
Escuela Elemental Angela Cordero Bernard
Calle Solimar, Urb. Villa del Carmen, Ponce, PR[7]

No obstante, el 23 de mayo de 2023 el foro primario emitió una *Orden* declarando No Ha Lugar la solicitud bajo el fundamento de que "[l]a solicitud debió presentarse cinco (5) días antes del señalamiento de juicio".[8]

El 25 de mayo de 2023 comenzó el juicio contra la Sra. Cielo Iris Colón Cartagena (en adelante, acusada), y antes de desfilar la prueba la representación legal de la acusada reiteró su solicitud de la citación de las personas solicitadas el 22 de mayo de 2023.[9] El TPI declaró nuevamente dicha solicitud No Ha Lugar por entender que dicha moción fue radicada el 22 de mayo de 2023 y el caso había sido radicado desde enero y ya había tenido varios señalamientos, por lo que no iba a reseñalar el juicio.

El Ministerio Público presentó dos testigos. A continuación, resumimos los testimonios vertidos por los dos testigos del Ministerio Público para un mejor entendimiento de los hechos.

### Sra. Irma Estrella Álvarez Rosario

La Sra. Irma Estrella Álvarez Rosario (en adelante, señora Álvarez Rosario) declaró que tenía cincuenta y seis años de edad y conoce a la acusada, pues era la expareja de su hijo, el Sr. Héctor Abraham Medina Álvarez.[10] Que fruto de la relación entre su hijo el Sr. Héctor Abraham Medina Álvarez y la acusada se procrearon dos niños.[11] Relató, además, que fungía como intermediaria, designada por el Tribunal, entre su hijo y la acusada, por lo que cuando le tocaba a su hijo buscar y recoger a los niños de la escuela, ella lo hacía.[12]

---

[7] Apéndice de la parte apelada, en el Anejo III, pág. 4.
[8] Apéndice de la parte apelada, en el Anejo IV, pág. 5.
[9] TPO, 25 de mayo de 2023, págs.2-6.
[10] TPO, 25 de mayo de 2023, págs.8-9.
[11] TPO, 25 de mayo de 2023, págs.9-10.
[12] TPO, 25 de mayo de 2023, págs.10-11.

Declaró que, el 5 de diciembre de 2022, alrededor de las 7:30 a.m., se encontraba llevando a sus nietos a la Escuela Ángela Cordero Bernard en Ponce.[13] Que al llegar al estacionamiento uno de sus nietos le comento que podía ver a la acusada y le comentó a su nieto "[n]o te preocupes, que no va a pasar nada, mi amor". Declaró que mientras se encontraba en el proceso de bajar a sus nietos y sus bultos, estando fuera de su "Pick-up", la acusada le gritó "[s]o sucia, puerca, irresponsable".[14]

Relató que antes de bajar a su nieto de cuatro años del auto escucho las expresiones de la acusada y sintió cuando la acusada le dio un golpe en su hombro derecho haciendo que perdiera el balance y se golpeara con el "poste" de su guagua en la cabeza y el hombro.[15] Declaró que la acusada se llevó a los niños.[16] Entonces, relató que, luego del suceso, se dirigió hacia el guardia de seguridad de la institución para contarle lo sucedido y contactar al trabajador social.[17]

Así las cosas, reseñó que acudió a las autoridades para contarle lo sucedido en el estacionamiento de la escuela y que fue aconsejada a ir al hospital porque se estaba quejando de dolor en la cabeza.[18]

En el contrainterrogatorio declaró que, mientras la acusada entregaba a los menores, está grabó a la acusada.[19] Relató que grabó mientras la acusada le gritaba y se lo enseñó a la policía.[20]

Luego, en el redirecto la señora Álvarez Rosario aclaró que la grabación de dicho video se dio luego de ocurrida la agresión contra su persona.[21]

---

[13] TPO, 25 de mayo de 2023, págs.10-11.
[14] TPO, 25 de mayo de 2023, pág. 11.
[15] TPO, 25 de mayo de 2023, págs.14-17.
[16] TPO, 25 de mayo de 2023, pág. 17.
[17] TPO, 25 de mayo de 2023, págs.17-18.
[18] TPO, 25 de mayo de 2023, págs.18-19.
[19] TPO, 25 de mayo de 2023, págs.53-54.
[20] TPO, 25 de mayo de 2023, pág. 54.
[21] TPO, 25 de mayo de 2023, págs.110-113.

### *Agente Magdalena Ponce Meléndez*

La Agente Magdalena Ponce Meléndez comenzó declarando que trabaja para la Policía hace veintisiete años y que en la actualidad trabaja en el Precinto Ponce Oeste y se dedica a la investigación de querellas.[22] Que, para el 5 de diciembre de 2022, la señora Álvarez Rosario se presentó al cuartel a realizar una querella por los hechos ocurridos ese mismo día a las 7:30 a.m. en el estacionamiento del plantel escolar Ángela Cordero.[23] Declaró que la señora Álvarez Rosario le relató que ese día estaba llevando a sus nietos en la escuela y que mientras se disponía a bajarlos la acusada:

> la empuja por el hombro derecho, ella pierde el balance y cae sobre el poste, se va hacia atrás y se pega con el poste de…, del vehículo, el área de la cabeza y del hombro.[24]

Luego, informó que la señora Álvarez Rosario le declaró que la acusada procedió a llevarse a los niños, a lo que acto seguido la señora Álvarez Rosario acudió a donde el trabajador social para comentarle lo ocurrido y procedió, posteriormente, a acudir al cuartel a querellarse.[25]

La Agente Magdalena Ponce Meléndez declaró que, según surge su de su investigación, la disputa resultó ser porque la señora Álvarez Rosario fue nombrada como mediadora en las relaciones paternofiliales por lo que buscaba los niños los viernes por la tarde y los llevaba a la escuela los lunes.[26] El viernes antes del 5 de diciembre de 2022 hubo una actividad en la escuela en la cual los niños fueron vestidos de jíbaros, y ese lunes, cuando la señora Álvarez Rosario fue a dejar a los niños en la escuela, los trajo vestidos de con la misma ropa de jíbaro. Esto causó que la acusada

---

[22] TPO, 25 de mayo de 2023, pág.117.
[23] TPO, 25 de mayo de 2023, págs.118-119.
[24] TPO, 25 de mayo de 2023, pág.120.
[25] TPO, 25 de mayo de 2023, págs.120-121.
[26] TPO, 25 de mayo de 2023, pág.122.

le reclamara por la vestimenta.[27] Aclaró además que, las únicas personas que presenciaron el acto fueron los niños, la acusada y señora Álvarez Rosario.[28]

Finalmente relató que aconsejó a la señora Álvarez Rosario a ir al hospital pues se quejó de que le dolía el hombro y tenía un "chichón" en la parte posterior de la cabeza.[29] De igual forma, declaró que se comunicó con la acusada para que pasara por el cuartel para entrevistarla y dejarle saber que alguien se había querellado contra su persona.[30]

En el contrainterrogatorio, la Agente Magdalena Ponce Meléndez declaró que sobre el "chichón" de la señora Álvarez Rosario no hizo anotaciones en sus notas, ni tomó algún tipo de fotografía.[31] Sin embargo, la Agente Magdalena Ponce Meléndez aclaró que la señora Álvarez Rosario le enseño el "chichón" que tenía en la parte posterior de la cabeza.[32]

Por su parte, la defensa de la señora Colón Cartagena, presentó dos testigos. A continuación, resumimos los testimonios vertidos por los dos testigos de la defensa para un mejor entendimiento de los hechos.

***Menor H.L.M.C.***

El menor H.L.M.C. relató que el lunes 5 de diciembre de 2022 llegó a la escuela con la señora Álvarez Rosario y vio a su madre, la acusada, mientras se estacionaban.[33] Cuando la acusada los vio, se acercó al automóvil de señora Álvarez Rosario.[34] Entonces, la acusada "jala" al menor y a su hermano y los llevó para su guagua para ponerles el uniforme porque tenían la ropa de jíbaro puesta,

---

[27] TPO, 25 de mayo de 2023, pág.122.
[28] TPO, 25 de mayo de 2023, pág.123.
[29] TPO, 25 de mayo de 2023, pág.122.
[30] TPO, 25 de mayo de 2023, pág.123.
[31] TPO, 25 de mayo de 2023, pág.127.
[32] TPO, 25 de mayo de 2023, pág.128.
[33] TPO, 25 de mayo de 2023, págs.135-139.
[34] TPO, 25 de mayo de 2023, págs.139-141.

mientras que la señora Álvarez Rosario lloró y expresó que ella los quería llevar a la escuela.[35]

Luego el menor H.L.M.C. expresó que la señora Álvarez Rosario procedió a buscar a los guardias, pero que no estaban.[36] También declaró que la señora Álvarez Rosario estaba grabando a la acusada, pero que esta última no lo autorizó.[37]

En el contrainterrogatorio, el menor H.L.M.C. relató que el día de los hechos llegaron a la escuela vestidos como jíbaros pues la acusada se quedaba con los uniformes y no se los daba a la señora Álvarez Rosario.[38] Declaró, además, que al momento de los hechos la acusada no le gritó ni empujó a la señora Álvarez Rosario.[39]

### Sra. Cielo Iris Colón Cartagena, Acusada

La señora Colón Cartagena, declaró que el 5 de diciembre de 2022 acudió al plantel escolar Ángela Cordero Bernard con su hijo mayor J.A.A.C. alrededor de las 7:10 a.m.[40] Que llevaba consigo los uniformes de sus hijos menores y esperó que llegara la señora Álvarez Rosario con sus hijos.[41] Relató que cuando llegaron sus hijos con la señora Álvarez Rosario se percató que su hijo, el menor H.L.M.C., estaba vestido con la ropa de jíbaro.[42] Que por tal razón se bajó de su carro y procedió a ir al carro de la señora Álvarez Rosario.[43]

Declaró, además, que se sintió "frustrada y triste" al ver a sus hijos vestidos con la ropa de jíbaro, pues creía que los menores podrían ser víctimas de "*bullying*".[44] Así las cosas, relató que al acercarse al carro de la señora Álvarez Rosario, los menores ya estaban fuera del mismo por lo cual el menor H.L.M.C. toma el bulto

---

[35] TPO, 25 de mayo de 2023, págs.141-143.
[36] TPO, 25 de mayo de 2023, pág. 143.
[37] TPO, 25 de mayo de 2023, págs.143-145.
[38] TPO, 25 de mayo de 2023, pág.154.
[39] TPO, 25 de mayo de 2023, pág.154-155.
[40] TPO, 25 de mayo de 2023, págs.170-171.
[41] TPO, 25 de mayo de 2023, pág. 171.
[42] TPO, 25 de mayo de 2023, págs. 172-173.
[43] TPO, 25 de mayo de 2023, pág. 172.
[44] TPO, 25 de mayo de 2023, pág. 173.

de su hermano menor y cruzaron la calle hasta el automóvil de la acusada, donde esta última los cambió.[45] Luego de cambiar a los menores, declaró que entró con los menores al plantel escolar y se percató de que la señora Álvarez Rosario estaba en la parte posterior al guardia de seguridad escolar grabándola y le deja saber que no autorizaba que la grabara.[46] Al dejar los menores, relató que procedió a irse del plantel.[47]

La acusada, atestó que luego de marcharse del plantel escolar recibió una llamada de la Agente Magdalena Ponce Meléndez dejándole saber que necesitaba entrevistarla pues se presentó una querella en su contra.[48] Que al llegar al lugar la acusada declaró, entre otras cosas, lo ocurrido en las horas de la mañana y que la alegada agresión nunca ocurrió.[49]

En el contrainterrogatorio, la acusada declaró que no le había entregado los uniformes de los menores a la señora Álvarez Rosario.[50] De igual forma, relató que esta fue la primera vez que ella se quedaba esperando la llegada de la señora Álvarez Rosario en el plantel escolar.[51] Finalmente, declaró que las únicas personas que presenciaron el incidente fueron ella, la señora Álvarez Rosario y los dos hijos menores de la apelante, ya que el guardia de seguridad del plantel escolar no se encontraba allí.[52]

Por último, el Ministerio Público presentó como testigo de refutación a la Agente Magdalena Ponce Meléndez.

### Testigo de Refutación, Agente Magdalena Ponce Meléndez

Según declaró la Agente Magdalena Ponce Meléndez al entrevistar a la acusada esta le expresó que al ver los menores

---

[45] TPO, 25 de mayo de 2023, págs.173-175.
[46] TPO, 25 de mayo de 2023, págs.177-178.
[47] TPO, 25 de mayo de 2023, págs.178-179.
[48] TPO, 26 de mayo de 2023, pág.5.
[49] TPO, 26 de mayo de 2023, págs.6-9.
[50] TPO, 26 de mayo de 2023, pág. 10.
[51] TPO, 26 de mayo de 2023, págs.11-12.
[52] TPO, 26 de mayo de 2023, págs. 17-19.

vestidos como jíbaros se molesta y se dirige al auto donde se encontraban los menores, y que para poder acceder a su menor de 4 años esta "sacó" con su mano a la señora Álvarez Rosario del medio. Esto es así, pues la acusada le comentó a la Agente Magdalena Ponce Meléndez que quería cambiarlo a su uniforme.[53]

En el contrainterrogatorio, la Agente Magdalena Ponce Meléndez declaró que no tomó notas en la entrevista hecha a la acusada.[54] De igual forma, expresó que la acusada nunca admitió haber realizado la agresión ni haberle gritado a la señora Álvarez Rosario.[55]

Finalizado el desfile de prueba, ambas partes dieron por sometido el caso.[56]

Aquilatada la prueba, el TPI encontró a la acusada, Sra. Cielo Iris Colón Cartagena, culpable por el delito de agresión consignado en el Artículo 108 del Código Penal de Puerto Rico, 33 LPRA sec. 5161, según enmendado.[57] Se dicto *Sentencia de Cárcel Suspendida y Libertad a Prueba* el 12 de julio de 2023, donde fue sentenciada a cumplir seis meses de cárcel bajo el régimen de sentencia suspendida.[58]

Inconforme, la acusada acude ante nos mediante el presente recurso de *Apelación*. En su escrito, señala la comisión de los siguientes errores:

> **Primer Error**: Erró el Tribunal de Primer Instancia al declarar No Ha Lugar la solicitud de citación de testigos de la defensa, presentada mediante moción, y la cual fue reproducida durante el señalamiento de juicio en su fondo. Esto anterior, en violación al derecho constitucional de la imputada a citar testigos, a presentar evidencia a [su] favor y [a un] debido proceso de ley.
>
> **Segundo Error**: Erró el Tribunal de Primera Instancia al no aplicar la presunción de evidencia adversa

---

[53] TPO, 26 de mayo de 2023, págs. 29-32.
[54] TPO, 26 de mayo de 2023, pág. 33.
[55] TPO, 26 de mayo de 2023, pág. 40.
[56] TPO, 26 de mayo de 2023, págs. 43-56.
[57] TPO, 26 de mayo de 2023, pág. 56.
[58] Apéndice de la parte apelada, en el Anejo V, págs. 6-7.

voluntariamente suprimida por el Estado, la cual no fue presentada durante el juicio y tampoco descubierta a la Defensa acorde con la regla 304 (5) de las de Evidencia.

**Tercer Error**: Erró el Tribunal de Primera Instancia al admitir evidencia inadmisible y/o contraria a derecho durante el juicio, así como excluir otra evidencia legalmente admisible, en clara violación al debido proceso de ley y a un juicio justo e imparcial.

**Cuarto Error**: Erró el Tribunal de Primera Instancia al declarar culpable a nuestra representada cuando la prueba de cargo no estableció su culpabilidad más allá de duda razonable en violación al derecho a la presunción de inocencia y al debido proceso de ley.

El Pueblo de Puerto Rico presentó el 28 de febrero de 2024 su *Alegato del Pueblo*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

### *Deferencia Judicial*

Como norma general, cuando los foros apelativos nos enfrentamos a un recurso de revisión apelativo en el ámbito criminal "la apreciación imparcial que de la prueba realiza el juzgador de los hechos en el foro primario merece gran respeto y deferencia...". *Pueblo v. Casillas, Torres*, 190 DPR 398, 416 (2014); *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo v. Echevarría Rodríguez*, 128 DPR 289, 326 (1991). Esto es así pues los Jueces o Juezas y los jurados se encuentran en mejor posición que nosotros para "apreciar y aquilatar la prueba y los testimonios presentados". *Pueblo v. Casillas, Torres*, supra.

En los procesos criminales, la apreciación de la prueba presentada en los foros primarios por parte de los foros apelativos es un "asunto combinado de hecho y derecho". *Pueblo v. Rodríguez Pagán*, supra; *Pueblo v. Cabán Torres*, 117 DPR 645, 653 (1986). De igual forma, la determinación de si la culpabilidad de un imputado ha quedado establecida más allá de duda razonable hecha por un juzgador de un foro primario "es revisable en apelación como

cuestión de derecho". *Pueblo v. Rodríguez Pagán*, supra; *Pueblo v. Cabán Torres*, supra. No obstante, y a pesar de lo establecido anteriormente, los asuntos respecto a los conflictos de prueba no serán revisables excepto "en ausencia de pasión, prejuicio, parcialidad o un error manifiesto". *Pueblo v. Rodríguez Pagán*, supra; *Pueblo v. Cruz Negrón*, 104 DPR 881, 882 (1976). Por lo tanto, en ausencia de pasión, perjuicio, parcialidad o un error manifiesto, los foros apelativos daremos deferencia a los foros primarios y no intervendremos en dichos asuntos.

El Tribunal Supremo ha expresado respecto a la deferencia dada a los foros sentenciadores lo siguiente:

> Al revisar una determinación relacionada con una condena criminal debemos tener presente que la apreciación de la prueba corresponde al foro sentenciador. Por lo tanto, como regla general, esta apreciación no será alterada, excepto que la realizada merezca ser revocada porque haya sido el producto de una valoración apasionada, prejuiciada, parcializada o manifiestamente errónea. Igualmente, podrá descartarse la deferencia debida al juzgador de primera instancia solo cuando un análisis integral de la prueba revele que la apreciación de la evidencia se alejó de la realidad fáctica o que la prueba es inherentemente imposible o increíble, de forma tal que cause en el ánimo del foro revisor una insatisfacción o intranquilidad de conciencia tal que estremezca su sentido básico de justicia.[59]

### *Agresión*

El Artículo 108 del Código Penal de Puerto Rico, 33 LPRA sec. 5161, según enmendado, tipifica el delito conocido como agresión. En lo pertinente, el artículo expresa que incurrirá en un delito menos grave "[t]oda persona que ilegalmente, por cualquier medio o forma, cause a otra una lesión a su integridad corporal". Artículo 108 del Código Penal de Puerto Rico, supra. El Tribunal Supremo ha expresado que para que se configure el delito de agresión es importante que concurran los siguientes requisitos:

1) que el imputado mediante cualquier medio o forma;
2) causó una lesión a la integridad corporal de otra

---

[59] *Pueblo v. Arlequín Vélez*, 204 DPR 117, 148 (2020); Pueblo *v. Toro Martínez*, 200 DPR 834, 858 (2018); *Pueblo v. Maisonave Rodríguez*, 129 DPR 49, 63 (1991).

persona y (3) que dicha actuación se perpetró de manera ilegal.[60]

Además, "[s]e trata de un delito a título de propósito, con conocimiento o temeridad". D. Nevares Muñiz, *Código Penal de Puerto Rico Comentado*, 4ta ed. Rev., San Juan, Puerto Rico, Instituto para el Desarrollo del Derecho. Inc., pág.181.

### *Quántum de Prueba para establecer Culpabilidad*

La Constitución del Estado Libre Asociado de Puerto Rico en su Artículo II Sección 11 establece que todo acusado de delito goza de una presunción de inocencia. De igual forma, la Regla 110 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R.110, según enmendada, establece lo siguiente:

> [e]n todo proceso criminal, se presumirá inocente al acusado mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Si la duda es entre grados de un delito o entre delitos de distinta gravedad, solo podrá condenársele del grado inferior o delito de menor gravedad.

El Tribunal Supremo se ha expresado sobre este derecho constitucional, en específico ha establecido que es:

> [l]a máxima que rige nuestro ordenamiento a los fines de que la culpabilidad de una persona que ha sido acusada de delito sea demostrada con prueba suficiente y más allá de toda duda razonable es consustancial con la presunción de inocencia y constituye uno de los imperativos del debido proceso de ley.[61]

Por lo tanto, le corresponde al Estado probar mediante evidencia la culpabilidad de un acusado de delito. *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002). Sobre la obligación del Estado de presentar evidencia sobre la culpabilidad del acusado el Tribunal Supremo he expresado lo siguiente:

> [t]al obligación no es susceptible de ser descargada livianamente pues, como es sabido, no basta que el Estado presente prueba que meramente verse sobre cada uno de los elementos del delito imputado, o prueba suficiente, sino que, más allá de eso, es necesario que ésta, además de ser suficiente, sea satisfactoria, es decir, **que produzca certeza o convicción moral en**

---

[60] *Pueblo v. De Jesús Mercado*, 188 DPR 467, 484 (2013).
[61] *Pueblo v. Irizarry*, 156 DPR 780, 786 (2002); *Pueblo v. De León Martínez*, 132 DPR 746 (1993).

**una conciencia exenta de preocupación o en un ánimo no prevenido**.[62] (Énfasis suplido).

El peso de la prueba para rebatir la presunción de inocencia que cobija a todo acusado en todas las etapas de los procedimientos le corresponde al Estado. *Pueblo v. Irizarry*, supra; *Pueblo v. Túa*, 84 DPR 39 (1961). Esto será posible mediante la presentación de prueba que "establezca la culpabilidad del acusado más allá de toda duda razonable", es decir que "los elementos del delito como la conexión del acusado con el mismo tienen que ser demostrados con ese *quantum* de prueba". *Pueblo v. Irizarry*, supra, en la pág. 788.

Sobre el concepto "duda razonable" el Tribunal Supremo ha expresado que "no es otra cosa que la insatisfacción de la conciencia del juzgador con la prueba presentada". *Pueblo v. Irizarry,* supra. en la pág. 788. Para que la duda razonable pueda absolver al acusado es importante que la misma sea "el resultado de la consideración serena, justa e imparcial de la totalidad de la evidencia del caso o de la falta de suficiente prueba en apoyo de la acusación". *Pueblo v. Irizarry,* supra. en la pág. 788.

### *Derecho del Acusado a la Comparecencia Compulsoria de Testigos a su Favor*

Como imperativo constitucional, todo acusado de delito tiene derecho "a obtener la comparecencia compulsoria de testigos a su favor". Art. II, Sec.11, Const. P.R., LPRA, Tomo 1. Sobre este derecho constitucional el Tribunal Supremo ha expresado lo siguiente:

> Ese derecho no está limitado a determinada etapa del juicio. **Es deseable que la solicitud para que se ordene la citación de testigos se haga antes del juicio. Con ello se facilita el trámite de su diligenciamiento sin causar dilaciones innecesarias y sin obstaculizar el desarrollo normal del proceso. Ello implica además menos inconvenientes para las personas citadas, dándoles tiempo necesario para hacer aquellos ajustes que les permitan comparecer al tribunal y descargar su responsabilidad ciudadana como testigos.**[63]

---

[62] *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002).
[63] *Pueblo v. Acosta Escobar*, 101 DPR 886, 889 (1974).

Este derecho constitucional no es absoluto, este puede ser atemperado si las circunstancias lo ameritan. *Pueblo v. Lausell Hernández*, 121 DPR 823,832 (1988); *Pueblo v. Burgos Hernández*, 113 DPR 834, 839 (1983).

Por otro lado, la Regla 235 de Procedimiento Criminal, 34 LPRA Ap. II, R 235, respecto a la citación de testigo expone:

Cualquier magistrado podrá expedir citación para la comparecencia y examen bajo juramento de testigos ante sí a los fines de la investigación de un delito o de una vista preliminar. Cuando el fiscal, en los casos y bajo las condiciones que estas reglas lo permitan, provea al tribunal el nombre y dirección de imputados o testigos, ello se entenderá como una solicitud de citación, bien para el trámite de determinación de causa, para el acto del juicio o para cualquier procedimiento pendiente de vista. En estos casos será deber del tribunal, prontamente, expedir u ordenar al secretario del tribunal que expida la citación o citaciones correspondientes, las cuales serán diligenciadas por los alguaciles del tribunal o sus delegados. El juez de cualquier tribunal podrá expedir u ordenar al secretario que expida citación para la comparecencia de cualquier testigo a juicio, a la toma de su deposición o a cualquier vista. El secretario del tribunal, a petición del acusado, podrá expedir citaciones libres de costas a esos mismos fines. Cualquier fiscal podrá igualmente expedir citación para la comparecencia y examen bajo juramento de testigos ante sí a los fines de la investigación de un delito. Si un testigo no obedeciere su citación, el tribunal a solicitud del fiscal podrá expedir mandamiento para su comparecencia ante dicho funcionario en la fecha y hora que señalare, bajo apercibimiento de desacato.

### *Presunción de Evidencia Voluntariamente Suprimida*

La Regla 301(A) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, define el concepto presunción como una "deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción". Se le conoce como hecho base al hecho o grupo de hechos previamente establecido. *Íd.* Mientras que el hecho que es deducido por la presunción se le denomina hecho presumido. *Íd.* Las presunciones pueden ser controvertibles o incontrovertibles, se denominan incontrovertibles aquellas las cuales la ley no permite que se

presente evidencia para rebatirla. Regla 301(B) de Evidencia de Puerto Rico, supra.

Como parte de las presunciones controvertibles y permisibles se encuentra la esbozada en la Regla 304 (5) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, la cual expone que "[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere". El Profesor Rolando Emmanuelli Jiménez sobre esta presunción ha escrito que:

> [s]e estima que las partes presentarán toda la prueba que les sea favorable por consideraciones de lógica y conveniencia. Si una parte actúa conforme a lo expuesto en este principio, se piensa que la motivación para ello es que la prueba no le es favorable.[64]

Sobre el efecto de las presunciones en los casos criminales, la Regla 303(A) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, establece que:

> Cuando en una acción criminal la presunción perjudica a la persona acusada, tiene el efecto de permitir a la juzgadora o al juzgador inferir el hecho presumido si no se presenta evidencia alguna para refutarlo. Si de la prueba presentada surge duda razonable sobre el hecho presumido, la presunción queda derrotada. La presunción no tendrá efecto alguno de variar el peso de la prueba sobre los elementos del delito o de refutar una defensa de la persona acusada.
> (A) **Cuando beneficia a la persona acusada, la presunción tendrá el mismo efecto que lo establecido en la Regla 302**. (Énfasis suplido)

En otras palabras, en los procesos criminales, la presunción tendría su efecto dependiendo de si perjudica o no al acusado. Cuando la presunción beneficia a la persona acusada, la Regla 303(A) de Evidencia de Puerto Rico, supra, tendrá el mismo efecto que en los casos civiles como se establece en la Regla 302 de Evidencia de Puerto Rico, 32 LPRA Ap. VI. En lo pertinente la Regla 302 de Evidencia de Puerto Rico, supra, establece que:

> En una acción civil, **una presunción impone a la parte contra la cual se establece la presunción el peso de la prueba para demostrar la inexistencia del hecho**

---

[64] R. Emmanuelli Jiménez, *Prontuario de Derecho Probatorio Puertorriqueño*, 4ta ed. rev., Ed. Situm, 2015, pág. 171.

**presumido. Si la parte contra la cual se establece la presunción no ofrece evidencia para demostrar la inexistencia del hecho presumido, la juzgadora o el juzgador debe aceptar la existencia de tal hecho. Si se presenta evidencia en apoyo de la determinación de la inexistencia de tal hecho, la parte que interesa rebatir la presunción debe persuadir a quien juzga de que es más probable la inexistencia que la existencia del hecho presumido**.

**III.**

En su recurso de *Apelación,* la parte apelante señala que erró el TPI al declarar No Ha Lugar la solicitud de citación de testigos de la defensa, presentada mediante moción, y la cual fue reproducida durante el señalamiento de juicio en su fondo. No le asiste razón, veamos.

La parte apelante presentó una *Moción solicitando citación de testigos* el 22 de mayo de 2023, ***tres días antes del juicio.***[65] Dicha moción fue declarada No Ha Lugar por el TPI al día siguiente.[66] Indudablemente, como imperativo constitucional toda persona acusada de delito tiene derecho a la comparecencia de testigos a su favor, dicho derecho no es absoluto.[67] Somos del entendimiento que los foros primarios tienen la discreción para la expedición de dichas citaciones, tomando siempre en consideración el imperativo constitucional y que su diligenciamiento no cause dilaciones innecesarias ni obstaculice el desarrollo normal del proceso.[68] Entendemos que la presentación de una moción solicitando citaciones de testigos tres días antes de comenzar el juicio, que ha sido previamente señalado en más de una ocasión[69] y fue presentado en enero no es oportuno y hubiera causado dilaciones

---

[65] Véase Apéndice de la parte apelada, en el Anejo II, pág. 3; Apéndice de la parte apelada, en el Anejo III, pág. 4.

[66] Véase Apéndice de la parte apelada, en el Anejo IV, pág. 5.

[67] Véase Art. II, Sec.11, Const. P.R., LPRA, Tomo 1; *Pueblo v. Lausell Hernández*, 121 DPR 823,832 (1988).

[68] Véase *Pueblo v. Lausell Hernández*, 121 DPR 823,832 (1988); *Pueblo v. Acosta Escobar*, 101 DPR 886, 889 (1974).

[69] Véase TPO, 25 de mayo de 2023, págs.2-6.

innecesarias.[70]  Por lo que no erró el TPI dentro de su discreción al denegar dichas citaciones.

La parte apelante alega, además, que erró el TPI al no aplicar la presunción de evidencia adversa voluntariamente suprimida por el Estado, la cual no fue presentada durante el juicio y tampoco descubierta a la Defensa acorde con la regla 304 (5) de las de Evidencia.

La alegada evidencia adversa voluntariamente suprimida que hace referencia la parte apelante es un supuesto video que fue mencionado durante el juicio el 25 de junio de 2023 y 26 de junio de 2023.[71]  La Regla 304 (5) de Evidencia de Puerto Rico, 32 LPRA Ap. VI, expone que "*[t]oda evidencia voluntariamente suprimida resultará adversa si se ofreciere*".  En el caso ante nuestra consideración tal grabación a la cual hace alusión el planteamiento de error no fue entregada al Ministerio Público ni a la policía, solo fue enseñado a la policía.[72]  Al no contar con la grabación como evidencia por parte del Ministerio Público somos del entendimiento que no es de aplicación la presunción establecida en la Regla 304 (5) de Evidencia de Puerto Rico, supra.

Por otro lado, la parte apelante alega que erró el TPI al admitir evidencia inadmisible y/o contraria a derecho durante el juicio, así como excluir otra evidencia legalmente admisible.  Sobre el planteamiento de admitir evidencia inadmisible, la parte apelante no expone en su escrito cuál fue la evidencia inadmisible y no fue discutida, por tal razón no entraremos a expresarnos respecto a esta parte del error y se entiende que la parte apelante renunció a ella.[73]

---

[70] Véase TPO, 25 de mayo de 2023, págs.2-6; *Pueblo v. Lausell Hernández*, supra; *Pueblo v. Acosta Escobar*, supra.
[71] Véase TPO, 25 de mayo de 2023, págs.53-57, 110-113, 143-145, 177-178.
[72] Véase TPO, 25 de mayo de 2023, págs.53-57,
[73] Véase *Pueblo v. Rivera*, 75 DPR 425, 431 (1953*); Quiñones López v. Manzano*, 141 DPR 139, 165 (1996).

Respecto al planteamiento de excluir otra evidencia legalmente admisible, no le asiste razón apelada, veamos.

La parte apelante hace alusión a los posibles testimonios del trabajador social del plantel escolar, el Sr. Soto y el guardia de seguridad de la escuela, el Sr. Luis Marcucci, como evidencia legalmente admisible que fue excluida. Reafirmamos nuestra respuesta respecto a la citación de testigos y le conferimos deferencia judicial al foro primario respecto a su labor discrecional. De igual forma, surge del testimonio de la propia apelante que las únicas personas que presenciaron el incidente eran ella, la señora Álvarez Rosario y los dos hijos menores de la apelante, por lo que el testimonio de las personas señaladas en la *Moción solicitando citación de testigos* no tendría suficiente materialidad, pertinencia y relevancia como la prueba que fue presentada.[74]

Finalmente, la parte apelante señala como último error que el TPI la declaró culpable cuando la prueba de cargo no estableció su culpabilidad más allá de duda razonable.

Debemos comenzar recordando que, como norma general, cuando los foros apelativos nos enfrentamos a un recurso de apelación criminal le debemos gran deferencia a la apreciación de la prueba hecha por el juzgador del foro primario.[75] Aunque el asunto sobre la culpabilidad de un imputado ha quedado establecido más allá de duda razonable hecha por un juzgador de un foro primario es revisable en apelación como cuestión de derecho, los foros revisores no podremos intervenir si no hay indicios de error manifiesto, pasión, prejuicio o parcialidad.[76]

---

[74] Véase TPO, 26 de mayo de 2023, págs. 17-19; *Pueblo v. Lausell Hernández*, supra; *Pueblo v. Acosta Escobar*, supra.

[75] Véase *Pueblo v. Casillas, Torres*, 190 DPR 398, 416 (2014); *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000); *Pueblo v. Echevarría Rodríguez*, 128 DPR 289, 326 (1991).

[76] Véase *Pueblo v. Rodríguez Pagán*, 182 DPR 239, 259 (2011); *Pueblo v. Cabán Torres*, 117 DPR 645, 653 (1986); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

De igual forma, debemos recordar que el delito de agresión consignado bajo el Artículo108 del Código Penal de Puerto Rico, 33 LPRA sec. 5161, para que se realice es necesario que concurran tres elementos. Estos son: 1) que el imputado mediante cualquier medio o forma; 2) causó una lesión a la integridad corporal de otra persona y (3) que dicha actuación se perpetró de manera ilegal.[77]

Luego de haber revisado la Transcripción de la prueba oral del juicio celebrado el 25 y 26 de mayo de 2023, concluimos que no existe algún indicio de error manifiesto, pasión, prejuicio o parcialidad que cree en nosotros duda razonable por lo que conferimos deferencia al foro primario. De igual forma, nos queda claro que se probaron los elementos del delito en cuestión.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Sentencia de Cárcel Suspendida y Libertad a Prueba* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[77] *Pueblo v. De Jesús Mercado*, 188 DPR 467, 485 (2013).